CHARLES GREEN, Administrator of AUSTIN PIGGOTT, Respondent, *v.* HENRY BELL *et al.,* Appellants.

### January 31, 1877.

1. In an action by an executor for rent due under a lease, the lessee may recoup on account of damages for breach of a covenant to repair.

2. The fact that the covenant to pay rent and the covenant to repair are separate and distinct covenants does not affect the right of the lessee to recoup.

3. A lessee cannot be deprived of his right to recover damages caused by the dilapidation of the leased premises because he did not himself repair, where the lessor had covenanted to repair.

4. The measure of damages for a breach of a covenant by the lessor to repair is the proximate and unavoidable injury to the lessee consequent upon the breach.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*J. M. & C. H. Krum,* for appellants, cited: Wag. Stat. 1016, sec. 13; Pom. on Rem., sec. 778; Stiles *v.* Smith, 55 Mo. 363; Lay *v.* Mechanics' Bank, 61 Mo. 72; Cook *v.* Soule, 56 N. Y. 420 ; Taylor's L. & T., secs. 371, 374; King *v.* Woodruff, 23 Conn. 56; Hay *v.* Short, 49 Mo. 139; Gordon *v.* Bruner, 49 Mo. 570; McAdow *v.* Ross, 53 Mo. 199; Aubuchon *v.* Long, 23 Mo. 99; Chambers' Admr. *v.* Wright, 40 Mo. 485; Gamble *v.* Gibson, 59 Mo. 594; Dixon *v.* Niccolls, 39 Ill. 372; O'Bannon *v.* Roberts, 2 Dana, 54; King *v.* Anderson, 20 Ind. 385; Robbs' Appeal, 41 Pa. St. 45 ; Mills *v.* Merryman, 49 Me. 65 ; Thompson *v.* North Missouri R. R. Co., 51 Mo. 190.

*James Taussig*, for respondent, cited: Wag. Stat. 87, sec. 26, p. 1352, sec. 37; Garnhardt *v.* Finney, 44 Mo. 460 (citing Dumpors' Case, 1 Smith's Ld. Cas. 102); Taylor's L. & T., 4th ed., secs. 357, 368; Aubuchon *v.* Long, 23 Mo. 99; McPherson *v.* Meek, 30 Mo. 349; Fisher *v.* Goebel, 40 Mo. 475; Cook *v.* Soule, 56 N. Y. 423; Rector *v.* Rankin, 1 Mo. 371.

BAKEWELL, J., delivered the opinion of the court.

This is a suit for $791.66, one month's rent, from June 15 to July 15, 1875, alleged to be due by defendants for certain premises occupied by them as a store. The petition sets out a written lease from plaintiff's intestate to defendants for the term of two years, from March 15, 1874, at the yearly rent of $9,500, payable in monthly installments; and alleges a breach of the covenant to pay rent, by a refusal to pay the month's rent due on July 15, 1875. The petition says that the rent was regularly paid up to that date; and that plaintiff was appointed administrator of Piggott on January 15, 1875.

The answer of defendants admits all the allegations of the petition except the allegation that $791.66 is due for the month ending July 15, 1875, and sets up by way of counter-claim that, by the lease sued on, the lessor, plaintiff's intestate, covenanted to keep the outside of the building demised in good repair; that there has been a breach of that covenant in that plaintiff, who then had charge of the building and was collecting the rents under the lease, suffered the outside of the building to become and remain out of repair during the month of June, 1875, so that, on June 20, 1875, goods of defendants in the building were damaged by water to the amount of $446.19. The answer further alleges that this happened by reason of a storm of rain, and that, though defendants used every reasonable precaution to protect their property, they were unable to do so, owing to the leaky condition of the roof and windows. A complete list of the goods damaged, and a description of the

goods, with the actual damage to each article in dollars and cents, accompanies the answer. And defendants state that, after deducting this damage, $345.47 is due plaintiff on account of rent sued for, which they pay into court. The answer concludes with a prayer for judgment against plaintiff for the counter-claim for $446.19, the amount of the damage to the goods.

To this counter-claim plaintiff demurred, and the demurrer was sustained. On the trial of the cause the plaintiff read the lease in evidence, and had judgment for the rent claimed. Defendants filed a motion for a new trial, and also a motion in arrest of judgment, which were overruled.

1. We think the motion in arrest of judgment was properly overruled. Real estate descends to the heirs, and as a general principle it may be said that the administrator has nothing to do with it except in case of a deficiency of assets. He is required, however, in this State, to include it in his inventory, and its value is taken into account in fixing the amount of his bond. In Missouri he often takes charge of it as soon as his letters are issued; and when he does so, and collects the rents, he is responsible for them as assets, and his sureties are liable. It is alleged in the answer in this case that the administrator collected the rents of the property occupied by defendants from the date of the death of his intestate, and, it would seem, with the consent of the heirs; certainly no one but the heirs can be heard to dispute his right to do so. He sues, then, as the trustee of an express trust; and can sue in his own name as administrator. That he should do so is generally for the benefit of all the parties interested; it enables the administrator to pay the debts of the intestate, and may often prevent a sale of the real estate. The consent of the heirs may well be presumed, especially as, under our law, he is bound to charge himself with these rents in his settlements,

and they are distributed under the order of the Probate Court.

2. It is, however, insisted by counsel for respondent that the covenant of the landlord to repair runs with the land, and that an action for the breach of it can be maintained only against the heirs of deceased, and not against the administrator or executor.

If it should be conceded that a separate and independent action could not be maintained against an administrator in possession, and who had collected rents, for a breach of covenant in the lease of his intestate to repair, it would not by any means follow that, in an action for rent by the administrator, the tenant could not recoup. Counter-claim includes recoupment and set-off; and, setting the statutory provisions as to counter-claim altogether aside, in the absence of any provision of the Practice Act, the right to recoup where a proper case might arise would always remain. There can be no question, upon the pleadings before us, that the defendants attempt to recoup. They admit the claim of plaintiff, less the damages, and offer to pay the difference. It is true that the pleader, at the conclusion of his answer, seems to set this up as a cross-action, and asks for a judgment for the amount of the damages which he has before asked to be allowed to recoup; but his meaning is plain enough. It is clear that the answer needed no replication as to this last claim, and that no affirmative judgment in favor of defendants should be asked. The concluding clause of the answer is a prayer for affirmative relief of a nature to which, on the answer itself, defendants were clearly not entitled; but this was not demurrable. The answer speaks of a counter-claim, but really pleads recoupment; and, if the circumstances were such that defendants were entitled to recoup, we think the answer, though carelessly drawn, is well enough.

3. Could defendants recoup? " Before the doctrine of

recoupment had been as fairly established as it now is,"
says Denio, J., in *Mayor of New York* v. *Mabie*, 13 N. Y.
154, " it was repeatedly decided that the lessee could not, in
an action for rent, set up the breach by plaintiff of a covenant
in the same lease, though such covenant concerned the sub-
ject for which the rent was agreed to be paid. The principle of
these cases was afterwards repeatedly disapproved of in the
same court in which they were decided, and it cannot be
denied consistently with the doctrine now well established
but that, in an action for a breach of contract, the defend-
ant may show that the plaintiff has not performed the same
contract on his part, and may recoup his damages for such
breach, in the same action, whether they are liquidated or
not."

In an action for rent the defendant may, under a covenant
of the landlord to keep the premises in repair, set up as a
counter-claim an amount expended by him in the necessary
repairs of the premises, and also damages sustained by the
loss of the use of certain parts of the premises rendered un-
tenantable for want of repair. *Myers* v. *Burns*, 35 N. Y. 269.

We do not consider the fact that the covenant to pay rent
and the covenant to repair were separate and independent
covenants any objection to the right of the defendants to
recoup.

And, if the defendants could have recouped against Pig-
gott in his life-time, they can recoup against his admin-
istrator after his death. When an action is brought by a
trustee, in that capacity, money due to or for the *cestui que
trust* can always be set off; for it will be considered that the
party in interest, and not merely the party of record, is the
one by or against whom the set-off should be made. Pars.
on Con. 744, and cases cited.

It would be highly inequitable, and quite contrary, not
only to the spirit of our system of pleading, but to the
modern doctrine of set-off and recoupment, to allow the ad-
ministrator to recover on the covenant to pay rent, and to

remit the lessee to his action against the heirs on their covenant to repair for his damages for the breach. The administrator sues as the representative of the heirs, or those entitled to the realty; both the benefit and the burden of covenants pass, in case of an assignment, not by direct operation of the assignment, but as an incident to the land to which the covenant was annexed. The present policy of the law is to prevent multiplicity of actions, and to settle in one suit, so far as that is possible, all the questions between the same parties arising out of the same transaction, or out of the transactions of a kindred nature. If defendants in this action were not permitted to recoup, plaintiff should not be permitted to sue.

4. Respondent insists that, in an action for a breach of covenant to repair, the right of recovery and measure of damages is limited to the cost of repairs not done to the leasehold estate; and that no recovery could be had for consequential damages, such as damages to goods kept on the leased premises.

The lessee, we think, cannot supinely wait whilst the demised premises fall to pieces about his head, and then abandon the premises and sue on his covenant to repair. But we do not consider that the lessee is deprived of his right to recover any actual damage he may have sustained by the dilapidation of the leased building merely because he did not himself repair as soon as the decay or dilapidation became dangerous. The lessees allege in their answer that the damage in this case occurred without any negligence on their part; we do not say that they are bound to allege, or are bound to prove, this as a condition precedent to recovery. The damages in this case are not remote or speculative; and it may be that the defendants may make out a case that will warrant a finding for the whole amount of damages claimed. If they had repaired the premises before the storm, the measure of damages would have been the expense of these repairs. The recovery is confined, in cases of this kind, to

the proximate and unavoidable consequences of the breach of the covenant to repair.

The judgment of the Circuit Court is reversed and the cause remanded. All the judges concur.