ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.*

SANDERS.

Opinion delivered June 7, 1909.

1. COVENANT TO BUILD LEVEE—ASSIGNABILITY.—A covenant of a railway company to build a levee which will protect the covenantees' field from overflow is a covenant which runs with the land. (Page 159.)

2. SAME—WHO MAY ENFORCE.—Where a railway company covenanted with a husband to build a levee which would protect from overflow a field owned by the husband and wife as tenants by the entireties, and after the husband's death the wife conveyed an undivided half interest in such field to another, the wife and her grantee are entitled to recover for breach of such covenant. (Page 160.)

3. SAME—BREACH—MEASURE OF DAMAGES.—For breach of a covenant to construct a levee which would protect land from overflow, the measure of damages is what it will reasonably cost to build such levee. (Page 160.)

4. SAME—INSTRUCTION AS TO MEASURE OF DAMAGES DISAPPROVED.—In an action for breach of a covenant to construct a levee which would protect certain land from overflow, it was error to instruct the jury that the plaintiff could recover the market value of a crop destroyed by overflow or the rental value of the land in case the crop destroyed had no market value. (Page 161.)

Appeal from Marion Circuit Court; *Brice B. Hudgins,* Judge; reversed in part.

*E. B. Kinsworthy, Lewis Rhoton* and *Horton & South,* for appellant.

When one declares for a breach of special contract, it is incumbent on him to prove substantially the material allegations of the declaration. 21 Ark. 301; 11 *Id.* 733; 2 *Id.* 397; 41 *Id.* 399; 76 *Id.* 333. Exhibit A should have been stricken out. It is void for uncertainty of parties and subject-matter. 5 A. & E. Enc. Law (1 Ed.) 432-9; 9 *Ib.* (2 Ed.) 132, (2); 2 Parsons, Cont. (2 Ed.) 515; 60 Ark. 489; 22 *Id.* 64; 41 *Id.* 501; 7 A. & E. Enc. Law (2 ed.) 289. There is no proof that the right-of-way agent did or could delegate his authority. 70 Ark. 354. The initials are meaningless. A patent ambiguity cannot be supplied by parol. 41 Ark. 501; 35 *Id.* 164; 81 Ark. 1-3; Parsons, Cont. (6 Ed.) Vol. 2, 560, 575, 576; 2 A. & E. Enc. Law (2 ed.) 289. Where a contract is reduced to writing, it is the only evidence. 30 Ark. 186. It cannot be varied by parol. 67 Ark. 62; 65 *Id.* 333; 73 *Id.* 431. A covenant running with the land inures to the benefit of the legal representatives and assignees of the grantee only. 49 Ark. 418. The estate of A. F. Hampton was not an estate of inheritance and descended to no one. 3 Words and Phr. Jud. Defined, tit. Estate by Entirety, pp. 24, 90; 66 Ark. 308; 44 Am. St. 97. Hampton had only a life estate.

2. A contract cannot rest partly in writing and partly in parol. 9 Ark. 506; 29 *Id.* 547; 35 *Id.* 164. The evidence of Mrs. Sanders was incompetent, as were the letters. Lee Estes was the husband of one of the plaintiffs and incompetent to testify. 34 Ark. 673. He could not prove his own agency for the wife. 56 Ark. 206; 44 *Id.* 213; 43 *Id.* 293. Mech. on Ag. 63, note 3. Wilber's testimony was also incompetent. Mech. on Ag. 100-1-2.

3. This was an action on a contract, and cannot be treated as one for negligence in costruction. 76 Ark. 333. It was a proper case to take from the jury and instruct for defendant. 69 Ark. 568; 75 *Id.* 408; 57 *Id.* 461.

4. Only privies of estate can sue on a covenant running with the land. 2 Min. Inst. 715, 716-17-18. The remedy was by action

for each separate overflow.  49 Ark. 423; 63 *Id.* 253; 52 *Id.* 250; 44 *Id.* 439.

5. Instructions must be consistent.  72 Ark. 31; 59 *Id.* 104; 55 *Id.* 397.  Here two different rules for the measure of damages were given.  72 Ark. 32-41; 59 *Id.* 104; 35 *Id.* 397.

6. The measure of the damages was the value of the right-of-way.  75 Ark. 89.

*Jones & Seawel* and *Hamlin & Seawel,* for appellees.

1. The contract is sufficiently explicit and definite; but if it were uncertain as to parties, subject-matter and interest, extrinsic evidence was admissible to make certain.  2 Pars. on Cont. (8 Ed.) 665; 17 Cyc. 710; 68 Ark. 326; 65 *Id.* 51; 75 *Id.* 55.  A party may sue on a promise made to another if made for his benefit.  85 Ark. 59; 46 *Id.* 132; 31 *Id.* 155; 33 *Id.* 107; Mechem on Agency, § 769.  The contract was made for the benefit of the land, and was a covenant running with the land. 49 Ark. 418, 423.  The contract was a proper exhibit.  Kirby's Dig., § 6129; Bliss on Code Pl., § 306; 4 Sandf. 696; 33 Ark. 593.  The contract, having been made by Hampton for himself and as agent of his wife and being a covenant running with the land, vested in plaintiff a right of action on the death of her husband.  49 Ark. 418; 86 Ark. 251; 11 Cyc. 1099 (11).  Such right would pass by conveyance. 49 Ark. *supra.*

2. Even if ambiguous and uncertain, the contract was admissible, as it could be aided by extrinsic evidence, and thereby be rendered definite and certain.  33 Ark. 107; 37 Ala. 619; 11 Cyc. 363-4. The genuineness of the contract was not denied under oath. Kirby's Dig., § 3108; 82 Ark. 105; 85 *Id.* 269.  Taken in connection with all the other evidence, the contract in connection with the deed was admissible.  17 Cyc. 708-11, 739 (II); 63 Ala. 284.

3. As a party for whose benefit a contract is made may sue on it, certainly evidence to show that fact is admissible.  17 Cyc. 708 (23 a and b.)  The letters were admissible to show that appellant had notice of the contract and failure to perform; also ratification.  73 Conn. 341; 17 Cyc. 410-11; 109 Ill. App. 520; 135 Iowa 181; 71 Kans. 441; 105 Md. 211; 37 Tex. Civ. App.

·512; 59 W. Va. 46; 56 Ark. 37; 145 U. S. 285; 78 Ark. 318; 80 *Id.* 15; 83 Ark. 403; 86 Ark. 309.

4. The evidence of Estes was admissible to show that he was acting for his wife as agent for her and Hampton. 90 Ark. 104; 80 Ark. 231; 29 Minn. 322; Mechem on Agency, § 721. A general objection to the competency of a witness is not sufficient if any of his testimony is admissible. 65 Ark. 106-110; 67 *Id.* 112; 86 Ark. 130; 77 Ark. 431; 58 *Id.* 446; 56 *Id.* 37; 22 *Id.* 80.

5. Wilber's testimony was admissible as a circumstance to show a written admission by the company that DeGraw was its agent. 43 Ark. 275; 16 Cyc. 943 (b).

6. The weight to be given evidence is for the jury, and their verdict is final. 82 Ark. 372.

7. Appellees were the proper parties, one an original covenantee, the other a grantee of the land. 78 Ark. 68; 49 *Id.* 418; 86 Ark. 251.

8. The measure of damages was what it would cost to perform the specific work. 13 Cyc. 162 (6); 39 Ark. 344; 72 *Id.* 3; 220 Ill. 256; 99 S. W. 341; 86 N. Y. Supp. 112; 204 Pa. 488; 75 Ark. 89.

Battle, J. During the year 1904 A. F. Hampton and his wife, Nancy, owned the east half of the northeast quarter and southwest quarter of the northeast quarter of section five, in township eighteen north, and in range seventeen west, in Marion County, in this State, as an estate in entirety, and on the 15th day of April, 1904, R. X. DeGraw and W. P. Smith procured from them a deed conveying to the railway company a right of way over these lands, and executed to them an instrument of writing as follows:

"April 15th, 1904.

"It is hereby agreed by the St. Louis, Iron Mountain & Southern Railway Company that it will construct a good sufficient levee at the crossing of Crooked Creek in the S. W. ¼ N. E. ¼ of sec. 5-18-17 to fully protect the field owned by A. F. Hampton; said levee to be constructed within 30 days from date hereof.

"R. X. DeGraw, Asst. R. of Way Agt.
"W. P. Smith. D. E."

The sole consideration expressed in the deed for right of way was one dollar. Crooked Creek flowed along by the lands of Hampton and his wife, and the levee mentioned in the contract was to protect the lands against overflow. The railway company constructed its roadbed on the right of way conveyed to it by Hampton and his wife, and at the same time built a small levee at the place stipulated in the contract, but it proved insufficient, and in the year 1906 Crooked Creek overflowed the field of the Hamptons and washed away the soil, growing crops and fences thereon. Hampton then notified A. W. Jones, assistant engineer of the railway company, of the condition and deficiency of the levee, and he (Jones) promised to build a new, or repair the old, levee, but before the work was completed Hampton died in December, 1906, intestate, leaving Nancy, his widow, and his daughter, Harriet, his only heir. The last work undertaken after it was completed also proved insufficient. In 1908 Crooked Creek again overflowed the lands and washed away the soil, crops and fences. No other levee was constructed or rebuilt. The widow of Hampton married Robert Sanders, and his daughter, Harriet, married Lee Estes. Nancy Sanders conveyed one undivided half of these lands to her daughter, Harriet, and they brought an action against the railway company to recover damages caused by the failure to construct a levee according to its contract, including the damages from overflows.

The defendant answered, and admitted that, on or before the 15th day of April, 1904, the plaintiff, Nancy Hampton Sanders, then Nancy Hampton, and A. F. Hampton, her then husband, owned the land mentioned in the plaintiff's complaint as joint tenants with the right of survivorship, having an estate therein by entireties, and that on said day they conveyed to the defendant by a proper deed therefor a right of way on which to build its railroad across the lands; and that A. F. Hampton departed this life on the 19th day of December, 1906. It denied that it executed the foregoing instrument of writing, or authorized any one to execute it; that it had notice of its existence at the time the railway company accepted the deed for right of way over the lands mentioned; and, if it was made with A. F. Hampton, denied that he was acting for himself and plaintiff, Nancy.

It alleged that, if the foregoing instrument of writing was a

valid contract, "it was personal to A. F. Hampton, and binding the defendant only to protect his field, and did not require it to build a levee to protect the property of the plaintiffs, and, the said A. F. Hampton having since departed this life, and his estate in said field having ceased, and plaintiffs not holding title to said lands under him, denied that it is liable to plaintiffs in any sum whatever for any breach of said contract, if the same has been broken."

The defendant moved to strike out the instrument in writing sued on, and said that it is void as evidence of a contract, because: "1. Said contract is void for uncertainty in the description of the persons between whom and for whose benefit it was made, for uncertainity as to the subject-matter, and does not show the plaintiffs had any interest therein. (2.) Said pretended written contract does not show with whom the defendant contracted. (3) Said complaint shows on its face that the plaintiffs do not hold under A. F. Hampton, the only name used therein, because, they say, said complaint alleges that said A. F. Hampton had an estate in entirety in said lands with the plaintiff, Nancy Hampton Sanders, as his joint tenant. (4) Said pretended contract purports only to be for the interest of the field owned by A. F. Hampton, whose title and interest in said field ceased with his death, and did not descend to the plaintiffs. (5.) That said pretended contract is void as to the description of the field of said A. F. Hampton. That for these reasons said Exhibit A is void as evidence of a contract inuring to the benefit of the plaintiffs, and is void as evidence of any contract whatever."

The motion was overruled.

Evidence was adduced in the trial by the parties, and instructions were given by the court. The jury returned a verdict in favor of the plaintiffs for $1,040 for breach of contract, for $70 for damages by overflow of 1906, and for $40 for damages by overflow of 1908, amounting in the aggregate to $1,150, for which the court rendered judgment; and the defendant appealed.

So. much of the evidence and instructions as is necessary to state will be set out in the opinion.

Appellant insists that the writing sued on is insufficient to constitute a valid contract. It contends that it is uncertain as to the parties and subject-matter, and does not show that either of

the plaintiffs has any interest therein or right to maintain an action for a breach of the same.

The deed for right of way executed by A. F. Hampton and his wife and the contract sued upon were executed on the same day and form a part of the same contract, each writing containing the undertaking of only one party, and both being necessary to constitute a complete contract. The contract was made in the name of appellant; the language of the contract being, "It is hereby agreed by the St. Louis, Iron Mountain and Southern Railway Company," etc. They refer to the same land. Crooked Creek, mentioned in the contract, flows along the lands mentioned in deed for right of way and the contract. The railroad was constructed on the right of way over these lands and across the creek. The levee was required by the contract to be constructed at this crossing to protect the field of A. F. Hampton against floods. The field to be protected was evidently that exposed to these floods, which was the field on the lands owned by A. F. Hampton and his wife as an estate in entirety, and it is thus shown that the contract was made for their benefit. When the railroad was constructed on the lands of the Hamptons, a levee was built at this crossing which proved insufficient to protect their lands against overflows, and another was built at the same place, and this also failed in the same manner. The consideration expressed in the deed for the right of way was only one dollar. The instrument of writing, construed in connection with the deed as a part of the same contract, furnishes the true consideration of the latter, and each furnishes the consideration of the other. The language of the instrument of writing and of the deed, read in the light of these facts, shows that the appellant, in consideration of that right of way, contracted with the Hamptons to build a levee at the crossing of Crooked Creek by its railroad sufficient to protect the field on their lands. Thus interpreted, it is a valid contract. The facts do not add to or vary the contract, or change it, but show the crossing and field meant by the contract, and the parties thereto are necessarily implied by the deed and contract.

There was evidence tending to prove that R. X. DeGraw, assistant right-of-way agent, and W. P. Smith, division engineer, had authority to make the contract entered into by them on

behalf of the appellant, or, if they did not have, it was ratified by their principal by attempting to perform it.

Letters of A. W. Jones, assistant engineer of appellant, directed to A. F. Hampton, in his lifetime, in which he promised in behalf of appellant to repair or rebuild the levee at the crossing of railroad on Crooked Creek, admitted as evidence over objections of appellant, were admissible to show authority for or ratification of the contracts of DeGraw and Smith.

Lee Estes, the husband of one of the plaintiffs, was allowed to testify against the objection of appellant as to the contract with appellant. But that related to his being in possession of such contract, and was not prejudicial, as the existence of such a contract was shown by undisputed evidence. He did not pretend to say that it was entered into by authority of appellant. He was allowed to testify as to letters of A. W. Jones, assistant engineer of appellant, being in possession of the plaintiffs. We hardly think that this was prejudicial. He never saw Jones write, and did not know his writing. He knew only that the letters were in possession of Hampton, and after his death in the hands of plaintiffs. That is not a disputed fact.

Mrs. Sanders, being a party to the contract sued on, is entitled to sue and recover damages. She conveyed one undivided half of the land to Mrs. Estes, and this establishes a privity of the estate between them, and the latter by virtue thereof is entitled to recover. *St. Louis, Iron Mountain & Southern Railway Company* v. *O'Baugh,* 49 Ark. 418. And the measure of the damages they are entitled to recover is what it will reasonably cost to build the levee that appellant undertook to construct. *Varner* v. *Rice,* 39 Ark. 344; *Plunkett* v. *Meredith,* 72 Ark. 3.

Appellant contends that a different rule of damages was established by *St. Louis & North Arkansas Railroad Company* v. *Crandell,* 75 Ark. 89, and *St. Louis, Iron Mountain & Southern Railway Company* v. *Berry,* 86 Ark. 309. But that proves nothing. The measure of damages is not the same in all cases, but it is intended to be compensatory for losses sustained, and varies according to the facts and circumstances of each case. For a breach of contract the damages recoverable should "be such as may fairly and reasonably considered as arising naturally therefrom, that is, according to the usual course of business, or such

as may reasonably be supposed to have been in the contemplation of both parties at the time that the contract was made, and as a probable result of the breach." In the first case cited Crandell, in consideration that the railroad company would locate and build a depot on a certain tract of land, purchased a part of the tract for the railroad, and gave it to the company, and also gave the right-of-way over his own land. The grantee constructed its road on the right-of-way given and built a depot on the tract purchased, and, after it had been established and maintained for a short time over a year, erected a passenger station 500 yards distant, and abandoned it as a passenger depot. Before the abandonment Crandell erected various improvements upon his property suitable to its then location close to the station. He recovered the amount paid for the tract, the value of the right of way through his land, and the loss in value of the property built by him near the depot. Such was the loss sustained by him by the breach of his contract. He could not recover the value of the depot, for it was not built or intended for him, but for the public. In the second case cited a right of way across certain land was conveyed to a railroad company in consideration of its placing a depot on the land, and the company failed to do so. It was held that the grantor was entitled to recover the value of the land so taken and appropriated, as damages. That was the loss he sustained by reason of the breach of his contract. He was not entitled to the value of a depot for the reason given in the first case. In the case at bar the appellee was entitled to a certain levee under his contract, and the reasonable cost of constructing it was what he lost by the breach of his contract.

The court instructed the jury over the objections of the appellant, as follows:

"3. If you find for the plaintiff on the second paragraph of their complaint, and further find that a part of the crop of the year 1906 was injured or destroyed, the measure of damages would be the actual value of the interest of plaintiff, Nancy Hampton Sanders, in the crop at the time of said injury, if any, with six per cent. interest from the date thereof."

"4. If you find for the plaintiff on the third paragraph of their complaint, and further find that a part of the crop of 1908 was injured or destroyed as alleged, the measure of damages

would be the actual value of the interest of plaintiff in the crop, if any, at the time of the injury, with six per cent. interest from the date thereof."

"6. Even if you should find for the plaintiff, yet the measure of damages to crops would be only the rental value of the land upon which crops were growing and were destroyed, plus the reasonable value of the labor in planting and cultivating such part of such crops as were damaged, provided such crops at time of the damage were so immature that they did not have a market value at the time."

The court erred in giving these instructions. The reasonable costs of constructing the levee is a full compensation for the failure to construct the same. If the appellees wished to avoid other damages from the same source, they could have done so by constructing the levee and putting themselves in the condition in which a performance of the contract would have placed them. *Varner* v. *Rice,* 39 Ark. 344.

Appellant insists that the damages assessed by the jury were excessive. It failed to construct a levee according to its contract, and one witness testified that cost of such a levee would be $2,000. The jury returned a verdict for $1,040.00 for that damage. The judgment of the trial court for that amount is affirmed, and is reversed as to damages awarded for overflows.