## YOUNG v. BERMAN.

### Opinion delivered June 27, 1910.

1. LANDLORD AND TENANT—OFFER TO SURRENDER—LIABILITY FOR RENT.— A mere offer, upon the part of a lessee, to surrender the leased premises, unless actually executed, does not operate as a surrender, nor relieve the lessee from liability to pay rent. (Page 83.)

2. SAME—LIABILITY FOR RENT.—A lessee who remains in possession after the lessor has broken his covenant to repair is not relieved of his liability to pay rent, but is entitled to damages for such breach, which he may recoup against a recovery of the rents. (Page 83.)

3. SAME—COVENANT TO REPAIR—DAMAGES.—The damages recoverable by a tenant for breach of the landlord's covenant to repair are such damages as result directly from the breach, and which would make good the actual loss caused thereby. (Page 84.)

4. DAMAGES—DUTY TO REDUCE.—A party injured by a breach of contract must make reasonable effort to prevent or reduce the damages; and where he can, by reasonable exertion or expense, arrest the loss caused by such breach, the measure of damages is the amount of such expense. (Page 84.)

5. LANDLORD AND TENANT—BREACH OF LEASE—MEASURE OF DAMAGES.—
   Where there has been a breach of agreement on the part of a landlord
   to make repairs, if the repairs are extensive and the cost excessive in
   comparison with the rent, the measure of the tenant's damages is
   the diminution in the rental value of the property by reason of such
   nonrepair; but where the repairs are inexpensive as compared with
   the rent, the measure of the tenant's damages is the cost of making
   the repairs. (Page 85.)

6. SAME—BREACH OF LEASE—BURDEN OF PROOF.—Where a tenant sues for
   failure of the landlord to make certain repairs as agreed, the burden
   is upon the tenant to prove the actual cost of making such repairs,
   and that the expense of making same would be excessive in comparison
   with the amount of the rent. (Page 85.)

7. SAME—BREACH OF LEASE—DAMAGES.—Where, upon breach by a landlord
   of an agreement to repair, the tenant did not vacate but retained the
   premises, he had a right to make the repairs and to recoup against
   the rent the cost of such repairs and the value of the premises if he
   was deprived thereof while the repairs were being made. (Page 85.)

8. APPEAL AND ERROR—HARMLESS ERROR.—The exclusion of competent evi-
   dence was harmless where the fact which it tended to prove was other-
   wise established by undisputed evidence. (Page 86.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

STATEMENT OF THE COURT.

This was an action instituted by the appellees to recover for the rent of a two-story brick store house situated in the city of Fort Smith. The original complaint was filed in May, 1909, and sought to recover the rent for the month of April, 1909. The cause was not tried until November 6, 1909, and on that day it was agreed by the parties orally in open court that the complaint might be considered amended so as to sue for rents due under the hereinafter mentioned lease for the months of April, June, July, August, September, October and November, 1909. There is a question as to whether or not the rent for the month of November was included in this amendment, which will be hereafter further noticed. The action was founded upon a written lease. On January 1, 1909, the parties entered into a written contract by which appellees rented to appellant the above property for a term of two years at a rental to be paid monthly in installments of $187.50 per month from the first to the fifth of each month. The contract con-

tained the following provisions relative to the repairs of the property: "Any repairs deemed necessary by lessee on the inside of the building for his convenience to be made by him at his own expense with the consent of the lessor, and all repairs and alterations so made to remain on premises without cost to lessor, excepting that lessee may remove all shelving, gas and electric fixtures and furniture. Lessor to keep building in habitable repair at all times. Said lessee and all holding under him agree to use reasonable diligence in the care and protection of premises during the term of this lease; to pay water license assessed against property; to keep water pipes and plumbing in order, unless beyond his control or power to prevent. It is understood that said premises are to be kept free of all nuisances, whether of privy, yard, cellar or sewer, at the expense of said lessee. The lessee obligates himself to keep the premises at all times free from the accumulation of ashes, trash or any rubbish."

The appellant had been in possession of the building for some years 'under a prior lease. On December 19, 1908, he wrote to appellees that the building was in an unsanitary condition, caused by the faulty construction of the sewer, which admitted sewage into the basement; and he asked the appellees to make repairs necessary to remedy the condition. On Dcember 22, 1908, the appellees replied by letter saying that they had sent a plumber to investigate the matter, and that he had reported that he could correct the defect. They also claimed in the letter that the unsanitary condition was due to negligent acts of appellant, and stated that they would do their part towards placing the premises in perfectly sanitary condition, and that it was the duty of appellant to make certain alterations in his management of the building and to keep it in sanitary condition. After this correspondence the above written contract of lease was prepared and sent to appellant for his execution. He signed same, and sent it to appellees with a letter in which he stated that "my acceptance and signing of this lease is conditioned" that the repairs which appellees agreed to make in the above letter of December 22 would be promptly attended to. In their complaint the appellees alleged that the appellant had paid the rents for the months of January,

February, March and May, 1909, but had failed to pay the rents for the other months above-named. In his answer the appellant alleged that appellees had failed to make the repairs to keep the building in habitable repair as required by the contract; that, by reason of this breach of the contract on the part of appellees, he had surrendered the lease and therefore was not liable for the rents sued for. He also alleged that he was damaged by reason of the failure of appellees to repair the building, and sought a recoupment of such damages against any claim that appellees might have for rents.

The appellant introduced testimony tending to prove that appellees had failed to place and keep the building in a sanitary and habitable condition. On the other hand the appellees introduced testimony tending to prove that about the time of the execution of the lease they had employed a plumber who corrected the defect in the sewer, and that they had placed the building in a sanitary condition and kept it in habitable repair; that after the repair of the sewer had been made the box over the drain had been disturbed and the cover broken, causing some water to accumulate in the cellar, and that this was due to acts of appellant.

The undisputed proof was that appellant was and continued in possession of the building under the lease, and sublet it during the months of February, March and April. On March 3, 1909, appellant wrote to appellees, stating that the building was not, and had not been placed, in habitable repair, and asking that it be put in that condition. To this letter appellees made no reply. On April 6 appellant again wrote to appellees, stating that the building was in an unsanitary condition, and on that account he declined to be further bound by the contract, and that he was ready to turn over the building; and requested them to indicate to whom they desired him to deliver the keys. On April 10 appellees replied that they declined to accept a surrender of the lease, and insisted that they had complied with the provisions of the contract on their part. Subsequently appellant again wrote appellees that he surrendered the lease and tendered to them the keys of the building, which appellees refused to accept. The uncontroverted evidence shows that appellant did not vacate the building or actually surrender the possession

thereof. He remained in the possession of and actually occupied it during all the months from the date of the execution of the contract to the day of the trial. He paid the rent for the month of May, 1909, and had an application from a merchant to rent it in May, 1909, and refused to do so, not because he had abandoned it and did not have the right to sublet it, but because, as he claimed, this person desired to rent only a part of the building, and for a short time.

At the request of the appellees the court gave among others the following instructions:

"D. If the jury find from the evidence that the building was not in habitable repair during any of the months for which plaintiffs sue for rent, defendant would be entitled to a credit on the rent sued for, whatever amount you find from the evidence it would cost to put the building in habitable repair.

"E. The jury will find for the plaintiff $187.50 for each of the months sued for with 6 per cent. interest on each month's payment from the first day of the month it was due to the present time. And, if you find from the evidence that the building was not in habitable repair during any of these months, you will find for the defendant for the amount you find from the evidence it would cost to put it in habitable repair, and from the two sums so found you will strike a balance and return the verdict accordingly."

The appellant requested a number of instructions, which were refused. They embodied substantially the following declarations: that if the appellees failed to keep the building in habitable repair so that same became unfit for the purpose for which it was rented, then appellant had the right to cancel the lease, and would not be liable for any rents.

The jury returned a verdict in favor of appellees for the rents of all the months except November.

*Ira D. Oglesby,* for appellant.

*Read & McDonough,* for appellee.

As long as the lessee remains in possession, the failure to put in improvements as agreed would not relieve the lessee from his liability to payment. Jones, on Landlord & Tenant, § 673. The tenant can only recoup as damages what it would

have cost him to make such repairs, but not for indirect damage such as the destruction of crops. 39 Ark. 344; 42 Barb. 582; 71 Ark. 251; 62 Ark. 393; 33 Ark. 632. No motion for a new trial necessary. 54 Ark. 468; 57 Ark. 370. Plumbing includes the sewer and drain pipes. 34 Atl. 549.

FRAUENTHAL, J., (after stating the facts). The appellant contends that he was entitled to an instruction embodying the principle that, in event the appellees failed to comply with their covenant to keep the building in habitable repair, then the appellant could not be compelled to comply with his covenant to pay rent. In other words, it is urged that if the appellees first committed a breach of the contract of lease then appellant had the right to cancel and surrender the lease, and in such event would not be liable for the rents of the building. He relies upon the principles announced by this court in the case of *Berman* v. *Shelby*, 93 Ark. 472, to support this contention. But we do not think that the doctrine set out in that case is applicable to the facts in this case. In that case, upon a breach of the covenants in the contract of lease on the part of the lessor, the lessee vacated the property and surrendered the actual possession thereof. Thereupon the lessor took actual possession of the property and leased it to other parties. In the case at bar the appellant, according to the uncontroverted testimony, did not vacate the building, but continued to occupy it and hold the actual possession thereof for all the months for which recovery was had. He only tendered back the keys of the building and offered to surrender the possession thereof. A mere agreement for a surrender of the leased property, where not actually executed, does not operate as a surrender. There can be no such surrender unless, in addition to the offer or tender of surrender, there is an abandonment of the property by the lessee and a resumption of the possession by the lessor; or such a vacation and relinquishment of the property by the lessee as will justify a resumption of the actual possession by the lessor. Where the lessee continues to occupy the premises and hold the possession, there is no surrender thereof, and the mere tender of the keys or the offer to turn over the possession will not operate as such a surrender. Such a tender or offer to surrender is like a tender of payment without actual pay-

ment, or like an accord without satisfaction; in all of which cases there is no bar to recovery. 24 Cyc. 1163-1372; *Fish* v. *Thompson,* 129 Mich. 313. As long as the lessee remains in possession, he is not relieved of his liability to pay rent; he is entitled, under such circumstances, only to a claim for damages for a breach of some covenant in the lease on the part of the lessor which he may recoup against a recovery of the rents. Jones on Landlord & Tenant, § 673.

There has been a diversity of opinion in the courts of the various States as to the measure of the damages to which the lessee is entitled when the lessor has failed to comply with his covenant to repair. In some courts it has been held that he may recover all damages which may result from such breach; in others, that the measure of the damages is the diminution in the rental value of the premises by reason of such breach. In this court it has been held that the damages which are recoverable in such and similar cases should be compensatory only; that is, such damages as result directly from the breach, and which would make good the actual loss caused thereby. A party injured by a breach of contract must make reasonable effort to prevent or reduce the damages. *Walworth* v. *Pool,* 9 Ark. 394. And if, under the circumstances of the case, he can, by the use of reasonable exertion or reasonable expense, arrest the loss caused by such breach, then the measure of damages which he should recover will be the amount of such expense.

In *Collins* v. *Karatopsky,* 36 Ark. 31, it was held that damages sustained by a lessee in the death of a member of his family from the failure of the lessor to repair were too remote and could not be recouped against a demand for the rent. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Sanders,* 91 Ark. 153, it was held that the measure of damages for a breach of a contract to build or repair a levee was not the damages to the crops and land resulting from an overflow caused by said breach, but that the true measure of the damages in such case was the cost of building or repairing the levee. In *Varner* v. *Rice,* 39 Ark. 344, it was held that in an action for rent the tenant may recoup, as damages for the landlord's breach of covenant to repair, the amount it would have cost the tenant

to make the repairs. See 2 Wood on Landlord & Tenant, p. 897, § 400; Jones on Landlord & Tenant, § 592; *Sparks* v. *Bassett,* 49 N. Y. Super. Ct. 270; *Green* v. *Bell,* 3 Mo. App. 291.

Where there has been a breach of an agreement on the part of the landlord to repair, the general rule for the measure of the damages growing out of such breach is that, where the repairs to be made are extensive, and where the cost thereof would be excessively large and expensive in comparison with the amount of the rent, the diminution in the rental value of the property by reason of said breach or the difference between the rental value of said property without such repairs and the rental value of the property with such repairs would be the measure of the damages recoverable. But where the character of the repairs are not extensive, and are not thus costly and expensive in comparison with the rent, the measure of the damages caused by a breach to make such repairs would be the cost thereof. *Miller* v. *Sullivan,* 15 Am. & Eng. Ann. Cases, 561, and note thereto.

It is incumbent upon the party claiming the damages growing out of such a breach to prove the actual cost of making such repairs, and by such evidence to show that the expense of making same would not be slight but large and excessive in comparison with the amount of the rent. In this case the appellant has introduced no testimony as to the actual cost of making the repairs which he contends the landlord agreed to make. On the other hand, the testimony introduced by appellee as to the actual cost of making such repairs shows that the expenses of making same would have been small. Under the circumstances of this case the measure of the damages for the breach by appellees of their agreement to repair was the cost of making the repairs.

In the case at bar the appellant did not vacate the leased premises upon the alleged breach of the contract committed by appellees, but retained possession thereof. Under the circumstances of this case he had a right to make the repairs which appellees had failed under their covenant to make and to recover the cost thereof from appellees, and the value of the use of the premises during the time he may have been deprived thereof while making the repairs; and, in event appellant did not make

the repairs, then he had the right to recoup, as damages against a recovery of the rent, the cost of such repairs. We are of opinion, therefore, that the court was correct in all its rulings upon the instructions.

At the trial of the case the court refused to permit the introduction of the above letters that passed between the parties prior to the signing of the lease. It is urged that these letters became a part of the written contract because the lease was signed and delivered by appellant only on condition that the agreements made by appellees in the letter of December 22 to make certain repairs should be a part of the written contract. But we do not think that the exclusion of said letters was prejudicial. In the contract of lease the appellees had covenanted to keep the building in habitable repair, and this, we think, covered every promise of repair made by appellees in said letter. The appellant introduced testimony tending to prove that appellees had failed to make all such repairs, and the court instructed the jury that the appellant was entitled to recover as damages the cost of all these repairs. This was the full measure of his damages; and the appellant was entitled under the undisputed evidence to no other right or remedy by reason of the breach by appellees to make any repairs mentioned in said letter or in the written lease. We do not think, therefore, that the exclusion of said letters constituted any prejudicial error.

At the time that the pleadings were orally amended during the progress of the trial some doubt was expressed by counsel in the presence of the jury as to whether or not the rent for the month of November, 1909, could be sued for. This doubt was expressed for the reason that it was thought that the rent for November was not at the time of said amendment payable under the contract. The amendment was not made in writing. The jury specifically named the rents for each of the other months in their verdict, but made no mention of the rent for November. We are of opinion that under these circumstances the rent for the month of November was not included in the amendment, and therefore was not put in issue in the case, and was not sued for. The judgment in this case cannot therefore

be a bar to any suit hereafter seeking to recover the rent for the month of November, 1909.

Finding no prejudicial error in the trial of this case, the judgment is affirmed.