SOUTHWESTERN BELL TELEPHONE COMPANY v. HODGES.

Opinion delivered January 10, 1921.

1. APPEAL AND ERROR—INSTRUCTION—FAILURE TO OBJECT.—Failure of an instruction to define the term "proximate cause" used therein can not be complained of on appeal where the trial court's attention was not called to the omission.

2. TELEGRAPHS AND TELEPHONES—FAILURE TO GIVE CONNECTION—INSTRUCTION.—In an action against a telephone company for failure to furnish connection to a subscriber, where there was evidence that if plaintiff had obtained medicine in time it would have allevited her illness, and that her failure to obtain medicine in time resulted in aggravating and continuing her illness, defendant's requested instruction that before plaintiff could have verdict it must be found that defendant's failure to connect defendant with the drugstore was the proximate cause of her sickness was properly modified by inserting the words "increased or continuing" before the word "sickness."

3. TRIAL—ARGUMENTATIVE INSTRUCTIONS.—It was not error to refuse an instruction which was argumentative, or one that was covered by other instructions given.

4. APPEAL AND ERROR—OBJECTION NOT RAISED BELOW.—It is too late on appeal for the first time to object that there would have been no substantial injury if plaintiff had attempted to procure medicine by other means than the use of the telephone, where the point was not raised below; there having been merely requests for a peremptory instruction and for one that only nominal damages could be recovered.

Appeal from Pulaski Circuit Court, Second Division; G. W. Hendricks, Judge; reversed.

*Walter J. Terry* and *Edward B. Downie,* for appellant.

The material questions in this case are, (1) was appellant negligent; and (2), if so, did this negligence cause the damages claimed to have followed; (3) are the damages excessive? All three of the instructions asked by appellees were given; the first was unfair, insidious and prejudicial; also abstract. Appellant was not liable in any event for any damages prior to 2:45 of the day the company was advised that Mrs. Hodges was sick; its first duty to appellees begin at that time. 103 Ark. 160. See, also, 92 Ark. 276; 96 *Id.* 78; 102 *Id.* 246.

2. The court erred in refusing the instructions asked by defendant. 131 S. W. 117; 80 Pac. 337; 139 S. W. 44; 133 Fed. 13; 131 N. W. 684.

3. There was no evidence that warranted the jury in drawing an inference against the appellant. 109 Ark. 206.

4. The verdict is excessive, and shows passion and prejudice. Only such damages as are the natural and proximate consequence of defendant's breach of contract can be recovered. 79 Ark. 484. The testimony fails to show any negligence on the part of appellant.

*Murphy & McHaney* and *Sherrill & Mallory,* for appellee.

1. Appellant was guilty of gross negligence, as the testimony shows.

2. This negligence caused the damages claimed by appellee. From the evidence the jury was fully warranted in finding that fact.

3. The verdict is not excessive, and there is no error in the instructions. 103 Ark. 160; 78 Ark. 545; 79 *Id.* 33; 216 S. W. 403; 89 Miss. 252; 8 Ga. App. 514.

McCULLOCH, C. J. The plaintiffs, R. J. Hodges and wife, N. V. Hodges, reside in the city of Little Rock. They lived at 514 Rock street, in this city, on March 29, 1918, and were subscribers to the telephone service furnished to the residents of this city by the defendant

Southwestern Bell Telephone Company. According to the allegations of the complaint, the defendant wrongfully failed and refused to furnish telephone service to Mrs. Hodges on the day mentioned above, and injury is alleged to have been sustained as the result of said breach of contract. This is an action instituted by the plaintiffs to recover damages on account of said breach.

The following are the facts as disclosed by the testimony adduced at the trial:

The Hodges family consisted of the plaintiffs and their young daughter, who was a school girl. The business of R. J. Hodges required his frequent absence from the city, and on the day in question he was out of the city and returned home about 12 o'clock that night. Their daughter attended school that day, leaving home about 8 o'clock in the morning and returned home about 5 or 5:30 o'clock in the afternoon. Mrs. Hodges has for several years been subject to severe attacks of headache which were caused or superinduced by malaria. Her physician had given her two prescriptions to relieve such attacks when they came on. One of the prescriptions was for calomel in purgative doses, and the other was for potassium bromide and caffeine to be used as a sedative, and the directions to Mrs. Hodges by her physician were that when she felt an approaching attack of her ailment to have both prescriptions filled and to take the medicine and go to bed and rest. The prescriptions were filed with a druggist who conducted his business at Ninth street and Rector avenue in this city, and Mrs. Hodges was accustomed to having the prescriptions filled and sent over to her residence when she was warned of the approach of an attack of illness.

She testified that she got up that morning with a headache and felt that one of the attacks described was coming on, but she told her daughter to go on to school. Soon after the child left the house Mrs. Hodges went to the telephone and began an effort to get connection with the central exchange, so that she could call the drug store to have the prescriptions filled. She got no response

from central, though she frequently repeated her efforts, until about 1 o'clock, when she was informed that her telephone service had been discontinued. She was unable to talk with the operator any further at that time, but after continuing her efforts she got connection at 2:45 o'clock, and after being informed again that the service had been discontinued on account of failure to pay the monthly bill which fell due that month, she informed the operator, as well as the manager, that she had paid the bill, and that she was sick and was endeavoring to get connection with the drug store in order to obtain medicine with which to relieve her ailments. The telephone bill had, in fact, been paid when due, and the discontinuance of service was the result of a mistake and was unjustified. The manager promised to have the 'phone connected up but failed to do so, according to Mrs. Hodges' testimony, and she continued her efforts to get connection with the drug store until about 4:30, when she became so ill that she was rendered unconscious and knew nothing of subsequent events until the next day. The daughter came home about 5 o'clock and found her mother across the telephone table unconscious and groaning with pain. The child also attempted to get the telephone service, but failed and went to the home of the nearest neighbor to order groceries by telephone. This neighbor was Mrs. Boyce, whose door was only a few feet from that of the Hodges home.

Mrs. Hodges testified that her headache grew worse as the day advanced, and that she had a severe rigor between one and two o'clock. The testimony shows that she suffered severely as the result of that illness, which would have been alleviated by the medicine she failed to obtain in apt time, and that it kept her in bed for several weeks. She was ill for a considerable length of time thereafter. The testimony shows that her husband and co-plaintiff expended a large sum of money in an effort to obtain relief for her ailments. The jury returned a verdict in favor of plaintiffs and awarded Mrs. Hodges com-

pensation for her injury in the sum of $2,000 and awarded
R. J. Hodges the sum of $1,000.

The court gave the following instruction at the re-
quest of plaintiff, over the objections of defendant:

"You are instructed that if you believe from the evi-
dence that the plaintiff, Mrs. Nolia V. Hodges, had paid
her telephone bill for the month of March, 1918, and that
the defendant telephone company knew, or, by the ex-
ercise of ordinary care, should have known that such
telephone bill was paid; and that on or about March 29,
1918, this plaintiff became ill and needed medicines or the
attention of a physician, and that to secure said medi-
cines or such attention she attempted to get a telephone
connection with her druggist or physician, and that said
defendant company refused or failed to give her connec-
tion, and you find that defendant was informed at the
time by Mrs. Hodges that she was ill and alone and
needed the medicines and medical attention which she
was attempting to procure by 'phone and that, as a result
of such refusal or failure to give this service requested
by Mrs. Nolia V. Hodges, the said plaintiff's illness grew
in severity and caused her to suffer great pain since that
time, and that such continued illness is the proximate re-
sult of defendant's failure to give such service, then
you will find for the plaintiffs."

The objection urged here against this instruction is
that it failed to define the term "proximate cause," and
left the jury unadvised as to the meaning that should be
given to that term.   The defendant offered no specific ob-
jection to the instruction, nor did it ask for an instruc-
tion defining the term "proximate cause," as applicable
to the facts of the case.   In fact, appellant requested the
court to give a similar instruction (No. 3) submitting the
issue as to the proximate result of the alleged misconduct
of defendant's servants in failing to give service, and
that instruction, like the one objected to, did not under-
take to define the term "proximate cause."   The defend-
ant having failed to call attention to the omission to

properly define the term, it is in no attitude now to assign as error the ruling of the court in giving this instruction. ·

It is also argued that this instruction is erroneous because there was no testimony sufficient to establish the fact that the procurement of the medicine would have prevented injury. There was testimony tending to show that the medicine, if procured, would have arrested the progress of the illness of Mrs. Hodges, and that the illness would not have become aggravated to the extent that the testimony showed that it did, and which, according to the testimony, caused acute and continued suffering.

The third instruction requested by the defendant reads as follows:

"3. You are instructed that, before you can return a verdict in favor of the plaintiffs, you must find that the failure of the defendant telephone company to give Mrs. Hodges connection with the drug store was the proximate cause of her sickness; that the failure of the company to give the telephone connection desired was the direct and contributing cause of Mrs. Hodges' injury, and that, had it not been for the defendant's failure to give the desired connection, the injury would not have occurred."

The court refused to give the instruction as requested, but modified it by inserting before the word sickness the words "increased or continued." Defendant also requested the following instruction, which the court refused to give:

"6. Before you can find a verdict for the plaintiff for other than nominal damages, you must find that if plaintiff's telephone had been in working order that she would have gotten in communication with the drug store, that the medicine would have been sent to her, and that it would have relieved her condition and would have prevented her subsequent illness. It is not enough to entitle plaintiff to a verdict for them to show that they might or

probably would have gotten the drug store, that the medicine would have been sent and that it might or probably would have relieved her condition and averted her subsequent sickness, but these facts must be certainly and definitely shown. You can not indulge in speculation as to whether plaintiff would have gotten into communication with the drug store, that the medicine would have been sent, and that it would have relieved her condition and prevented her subsequent illness.''

The court gave instruction No. 5 requested by the defendant, which reads as follows:

''5. A party to a contract is only liable in case of a breach thereof for such damages as he can see or is advised are likely to flow from the breach. In this case there is nothing in the contract agreeing to furnish telephone service to indicate that the failure to furnish it on the day named in said complaint, or any other particular day, would result in the damages claimed in the complaint sued on, and it is not shown that the plaintiff advised the defendant of her sickness and the need of telephone service to procure medicine until about 2:45 p. m. on the day on which the defendant is charged with breach of its contract. You are instructed that, until the defendant was advised of these special circumstances, it could not be held liable under said contract for the damages claimed. You are further instructed that the defendant, after it had been advised of Mrs. Hodges' sickness and her desire to communicate with her physician or drug store, had a reasonable time, acting promptly and diligently, within which to restore telephone connection so that she might use her telephone. Therefore, if you find that the defendant did restore the telephone service within a reasonable time, acting promptly and diligently, your verdict will be in favor of the defendant.''

The modification of instruction No. 3 was proper, for, as stated before, there was evidence tending to show that if Mrs. Hodges had obtained medicine in apt time it would have alleviated her illness, and that her failure to

obtain medicine in apt time resulted in aggravating and continuing her illness.

Instruction No. 6, asked by defendant, was properly refused because it is agumentative. All that appellant was entitled to in that instruction was embraced in other instructions given.

It is contended here for the first time that, according to the undisputed evidence, Mrs. Hodges could have prevented the injury by resorting to other methods of obtaining the medicine and that her failure to take any steps to mitigate the injury resulting from the failure to furnish service prevents plaintiffs from recovering any substantial amount of damages. In other words, it is contended that there would have been no substantial injury if Mrs. Hodges had attempted to procure the medicine by other means. The doctrine announced by this court in *Young* v. *Berman,* 96 Ark. 78, and *Western Union Tel. Co.* v. *Ivy,* 102 Ark. 246, is invoked. After a careful consideration of the contention, we have reached the conclusion that the point is raised too late, and that it would be an injustice to plaintiff to permit it to be raised now for the first time. It is true that defendant asked for a peremptory instruction and also asked for an instruction telling the jury that there could only be a recovery for nominal damages, but, conceding that the question was technically raised by these instructions, yet there is no escape from the conclusion, after careful perusal of the proceedings below, that the question of mitigation of damages was never actually called to the attention of the court or the plaintiffs in the action. Mrs. Hodges and her daughter and Mrs. Boyce, her neighbor, each testified in the case, and neither of them was asked a single question in regard to the opportunities for communicating with the drug store or of obtaining the medicine in any other way. Mrs. Hodges testified in detail about the occurrences of the day and was cross-examined at length on the subject, but she was not asked any question tending to elicit an explanation as to why she did not make an effort to get relief in some other way. It may be that she could

have satisfactorily explained to the jury why she could not and did not obtain relief in some other way. It would, as before stated, be unjust to the parties to permit that question to be raised here for the first time, for the plaintiff could have been put on guard by a simple question on this subject or by a request for an instruction directly submitting the issue as to the duty of Mrs. Hodges to mitigate the injurious results from the failure of the defendant to furnish telephone service.

It is further contended that the verdict is excessive, but we think the evidence tends to establish injuries to the plaintiffs which justify the award of damages fixed by the jury.

The judgment is therefore affirmed.

SMITH, J. (dissenting). The judgment recovered was for $3,000, that sum being awarded as compensation for the failure to give a subscriber, who was entitled to service, telephonic connection with a nearby drug store, which would have enabled the subscriber to have placed an order for two prescriptions to be filled. One prescription was of calomel in purgative doses, the other for potassium bromide and caffeine. There was testimony to the effect that these prescriptions, if taken in time, afforded Mrs. Hodges, the person for whom they were written, relief from the headaches from which she periodically suffered.

But the doctor who wrote the prescriptions testified that the direction accompanying the prescriptions was for the patient to go to bed and to remain quiet and to take the medicine at the first indication of the troubles the medicine was intended to relieve. Mrs. Hodges testified that when she arose on the morning in question she felt one of the attacks coming on. She did not retire. Neither did she allow her daughter to remain at home with her. On the contrary, she told her daughter to go to school, and the daughter went. Mrs. Hodges performed unassisted all her domestic duties. In the meantime, she continued to grow worse, and at 1 o'clock had

a rigor, yet it was not until 2:45 in the afternoon that she furnished to the telephone company the explanation of the special circumstances which made the company liable for the special damages. *Southern Telephone Co. v. King,* 103 Ark. 160. After knowing early in the morning that one of these periods of suffering was coming on, and after knowing that she should take the medicine and go to bed as directed by the doctor, she permitted half the day to expire before she even told the telephone company of the special circumstances.

She says she was all the time trying to get telephone service. She could have sent her daughter for the medicine in the morning; but she thought she could 'phone the order. She could herself have gone to the drug store a few blocks away; but she relied on the use of the 'phone. The time was March 29; the place, 514 Rock street, one of the old and long built-up residential streets of the city of Little Rock. Necessarily many 'phones in the neighborhood were accessible, and would no doubt have been available in so great an emergency if Mrs. Hodges preferred to use the telephone, rather than to go, or to send to, the drug store as she might have done. In my opinion, it would be difficult to state a case where the duty to minimize the damages could be more obvious, or the means of doing so be more readily at hand.

It is said that the question of the duty to avert the injury and reduce the damage was not mentioned in any form in the trial below, and that it is too late to raise it now. I am of the opinion, however, that this question goes to the sufficiency of the evidence to support the amount of the damages recovered; and the question of the excessiveness of the verdict was properly raised below. The question is, therefore, presented here, and since the duty to mitigate the damages, and the opportunity to do so, are established by all the testimony, the judgment should be reversed; or, if this is not done, it should be affirmed for nominal damages, as connection was furnished the subscriber late in the afternoon.

In so announcing my view, I have in mind that this is a suit for damages for the failure to give service, and that in such actions it is proper to consider the duty of the party injured to minimize the damages. *Western Union Telegraph Co.* v. *Ivy,* 102 Ark. 246.

Mr. Justice WOOD concurs.