STEPHEN L. NORTH, et al., v. SARAH J. MOORE, et al.

1. JUDGMENT; *When void.* A judgment rendered where there has been no service, either personal or by publication, is void and a nullity; and a sale of real estate under such judgment passes no title to the purchaser.

2. PRACTICE; *Findings of Fact sustained, when the Evidence is not preserved.* Where the facts do not appear upon which a court decides that the unsuccessful defendant in an action for the recovery of real estate is entitled to the benefit of the occupying claimant law, the supreme court cannot say that the court below erred in limiting the inquiry, as to the improvements, to those made after a particular period.

3. —————— *Occupying Claimants; Notice of assessment of Value of Improvements.* In proceedings to value improvements under the occupying claimant law, the party adverse to the one making a motion for a jury, or his attorney of record, is entitled to reasonable notice of the same; but when a notice is given the day before to the attorney, and he makes no objection to the sufficiency of the notice, but appears and takes part in the inquiry, he thereby waives all objection to the insufficiency of the notice.

---

4. VERDICTS; *Assessments; Ex parte Affidavits.* The jury are the tribunal constituted by law to value the improvements; they are selected under the law for their impartiality and judgment, and when there is nothing to show that they were influenced by passion or prejudice, this court is not inclined to set aside their valuation and order a new assessment upon *ex parte* affidavits which show that, in the opinion of the affiants, the valuation was too low.

5. CASE; BILL OF EXCEPTIONS; *Refusal of Judge to sign.* When the facts do not appear, the refusal of a judge to sign a case made cannot be corrected on error.

### *Error from Leavenworth District Court.*

SARAH J. MOORE and six others, heirs at law of James C. C. Moore, brought ejectment against *Stephen L. North* and *Maria J. North* to recover possession of a certain lot in the city of Leavenworth. The defendants answered, admitting possession by them, and alleging that on the 15th of September, 1863, in a certain action in the district court of Leavenworth county, wherein Samuel M. Davidson and others were plaintiffs, and James C. C. Moore (ancestor of the plaintiffs) was defendant, a decree was entered whereby the lot in question was to be sold, and that the same was sold and conveyed under said decree, in December, 1863, to C. and S., who afterward, on the 28th of December, 1863, conveyed said lot to defendant *Maria J. North*, by deed in fee simple, and that the conveyances were duly recorded. The answer further states that said *Maria* had ever since occupied said premises by virtue of said purchase, and had made large and lasting and valuable improvements thereon, planting trees and building houses thereon, paid taxes on the premises, etc., and asking, in case her title should fail, that she have the benefit of the "occupying claimant act." The plaintiffs filed a reply containing a general denial.

The second trial of the action was at the July Term, 1868, before J. A. B., *judge pro tem.;* and a jury being waived, the court made a special finding of facts, from which it appears that James C. C. Moore was the patentee from the government of certain lands including the lot in controversy; that in 1859 Moore contracted, in and by a title bond, to sell and convey said

lot to certain parties, who, in June, 1863, commenced an action against said Moore, on said bond, to compel the specific performance of said contract; that a decree was made and entered in said action, Sept. 15, 1863, "ordering, adjudging, and decreeing that said James C. C. Moore within forty days from date of said decree convey the said lot to said S. M. D., W. H. L., and S. H., and in case such conveyance should not be made said decree should stand and operate as such conveyance;" that in a subsequent proceeding between said D., L., and H., for a partition of said lot, the lot was sold pursuant to an order of the court, and conveyed by the sheriff to C. and S., who by their deed of warranty, sold and conveyed said lot, December 28th, 1863, to *Maria J. North;* that said Moore died in September, 1865; that plaintiffs are his widow and children. None of the evidence is preserved. It was claimed that the judgment or decree of Sept. 15, 1863, divesting Moore of his title was void; and respecting this point the record shows that the court found as follows: "That in June, 1863, said D., L., and H. commenced an action against said Moore to compel a specific performance of said contract, in which action the summons against Moore was returned 'not found,' and *steps were taken* to secure constructive service by publication; that after the death of Moore, and in May, 1866, his death was duly suggested to the court, and his administrator, widow, and children were substituted as defendants in said action, and on their application the said district court vacated and set aside the said judgment or decree of 15th of September, 1863, and declared the same to be null and void, and of no effect whatever, *for want of jurisdiction of the person of James C. C. Moore, the defendant.*"

As conclusion of law, the court found that the defendants in error (the heirs of Moore) were entitled to recover possession of the lot in controversy, and judgment was given accordingly, to which plaintiffs in error excepted. The record continues:

" And thereupon came the said *Maria J. North,* by H. & S., her attorneys, and made application to the court here for the valuation of improvements, and assessment of damages, under the statute 'for the relief of occupying claimants;' and the

court having considered the same, are of the opinion that the said *Maria J. North* is entitled thereto; whereupon it is ordered that further proceedings may be had in the premises agreeably to the provisions of said statute as to all improvements *made since the 28th of December*, 1863. To which ruling, refusing the benefits of said statute for improvements made *prior* to said time, said defendants except."

Proceedings were then had as provided by the "occupying claimant act." (Comp. Laws, ch. 25, §§ 3 to 7, p. 122; Gen. Stat., Civil Code, §§ 603 to 607.) No notice was given to plaintiffs in error of the time the jury would proceed to view the premises and assess the value of the improvements; but their counsel attended and took part in the proceedings. The jury assessed the value of the improvements made by *Mrs. North* since December 28th, 1863, at $250, and the value of the rents and profits of the premises for the same length of time at $222.21, leaving an excess in favor of *Mrs. North* of $27.79. Plaintiffs in error moved to set aside this assessment as being too small, and filed a number of affidavits (all taken without notice to plaintiffs below) in support of said motion. The motion was overruled, and plaintiffs in error excepted.

Time had been given to plaintiffs in error to make a case. They prepared and presented their case to the court at the next (September) Term, at which time H. W. I. was on the bench as *judge pro tem.* Said judge refused to sign the case, assigning as a reason for such refusal that "the said cause had not been tried before said H. W. I., judge pro tem." Plaintiffs in error excepted, and now bring the case to this court on error for review.

*Hurd & Stillings*, and *Thomas P. Fenlon*, for plaintiffs in error:

1. The findings show that a decree of conveyance was made by the district court against the ancestor of the plaintiffs below, and *while that decree remained in form as valid and binding*, conveyances were made so as to invest the plaintiffs in error with title, if by virtue of such a decree title could be acquired by an innocent purchaser.

The court had jurisdiction of the subject-matter and the contract, but after the conveyance to the plaintiffs in error the decree was set aside on motion of Moore's administrator and heirs, for want of sufficient service by publication.

Section 83 of the code of 1862, (§ 77 code of 1868,) provides for the security of innocent purchasers in case judgment is afterwards opened. 13 Ohio, 445; 15 id., 447, 505; 17 id., 409; 2 Ohio St., 443; *Hammond v. Davenport*, 16 Ohio St., 183. The same reason applies under our statutes that applies in Ohio, as the statutes are copied from that of Ohio.

2. The proceedings under the occupying claimant law were restricted by the order of the court to such improvements as had been made after a certain day, being the day on which the deed was made to plaintiffs in error.

The statute has received by this court the same construction as that given the same provisions in Ohio; (4 Kas., 353.) The limitation to the operation of the statute deprived the plaintiffs in error of nearly all substantial benefit from the law.

But we claim that when plaintiffs in error bought of the purchasers at the judicial sale, (who assumed to have and convey title in fee simple,) they occupied the same position as their grantors, and their rights related back to the date of the judgment of Sept. 15th. To deny this proposition is to reach the absurd conclusion that the vendee, by absolute deed, would be estopped from denying the title of any antecedent vendor in the chain of title, and is untenable. 3 Metc., 42; 11 Miss., 298; 1 Ohio St., 390; 3 Ohio St., 344.

3. The plaintiffs in error were entitled to a reasonable notice of the time of making the assessment. No such notice was given. 11 Ohio, 35.

4. The court erred in refusing to settle the "case." It was in the power of *the court* to settle and sign a case made, and the defendants could only have excepted to it at the time the first order was made, giving the sixty days, which they did not do. 4 Kas., 563; 1 Monroe, 130, 216; Hardin, 479; 2 Dana, 287; 10 B. Mon., 37; 1 Caines, 511; 3 Ohio, 49; 6 Ohio St., 12; 8 id., 201.

*James McCahon* and *Clough & Wheat*, for defendants in error:

1. The defendants below, North and North, acquired the title conveyed by the title bond, and no other or greater. They cannot occupy any better position as against the heirs of Moore than his vendee himself could under said bond. The stream cannot rise higher than its fountain. 3 Kas., 293; 21 Iowa, 474.

2. That the defendants, occupying the position that they did, were estopped from denying the title of the plaintiffs, is well settled. An agreement to purchase lands estops the purchaser, and those claiming under him from denying the title of the vendor. 2 Greenl. Ev., §§ 305, 331, note 5; 4 Johns., 202; 14 id., 224; 1 Wend., 418; 7 Cow., 637, 717; 2 Pet., 265, 295; 16 Ill., 78, 416; 2 Wheat, 224; 2 Eng. L. & E., 325.

3. It was not error to limit the benefit of the occupying claimant law to such improvements as were made by the defendants after the 28th of December, 1863. The defendants should not have been allowed for any improvements, their title not being adverse to the title of the plaintiffs. 21 Iowa, 474; 11 id., 473; Walk. Ch., 175; 6 Johns. Ch., 398.

For aught that appears in the record, the defendants below had full notice of the title of the plaintiffs below, and did not act in good faith in making any improvements. 1 Ohio St., 118.

4. The application for the benefit of the occupying claimant law is a separate and distinct proceeding from the main action. 1 Ohio, 156.

The proceedings to assess the value of the improvements were regular. There was no error in refusing to set the assessment aside. If any notice was necessary it was waived by the appearance of defendants by their attorney before the jury and taking part in placing evidence before them. The assessment of the value of the improvements was a question for the jury, and their disposition of it cannot be interfered with.

Neither the judge *pro tem.*, (H. W. I.,) nor the court of which he was then acting as judge, erred in refusing to settle and sign the case made and presented, for the reason that he

was only a temporary judge, and the case had not been tried before him. He could not on any disputed point decide between the parties. And there is this further reason: the case or copy had not been served as required by law and the rules of the supreme court, such service being necessary in order to give the court or judge jurisdiction. 30 Vt., 277; 7 Mo., 250; 19 Johns., 246; 8 Cowen, 746.

If the refusal of the court or judge, or both, was correct, it makes no difference whether the reasons given for the refusal are correct or not. Such refusal is not ground for reversal. The party should proceed by mandamus. 1 Halsted, 370.

The opinion of the court was delivered by

KINGMAN, C. J.: This was an action brought by defendants in error to recover a certain lot in Leavenworth. The issues were tried by the court and special findings of the facts were made, and judgment for the recovery of the lot. Whereupon the plaintiffs in error claimed the benefit of the occupying claimant law. They were adjudged entitled thereto, and an inquiry awarded. A jury was summoned, and a return made by the jury awarding damages to plaintiffs in error. They excepted, and moved the court to set aside the assessment and valuation, which the court refused to do.

In this court five grounds of error are assigned: First, That the court erred in the conclusions of law from the facts found. Second, That the court erred in limiting the benefit of the occupying claimant law to such improvements as were made after the 28th of December, 1863. Third, In refusing to set aside the assessment made. Fourth, In refusing to settle and sign the case made and presented. Fifth, In refusing so to do for the reasons stated by the judge. Of these alleged errors in their order.

I. James C. C. Moore was the original owner of the lot. On the 5th of September, 1863, the district court of Leavenworth county made a decretal order for a conveyance of the lot in controversy to certain parties plaintiffs in a suit against said James C. C. Moore. On the 7th of May, 1866, this judgment

1. Judgment, without service or notice, void not voidable.

was declared to be "null and void," and of no effect whatever, for want of jurisdiction of the person of James C. C. Moore. Between the time of rendering these judgments, Maria J. North, one of the plaintiffs in error, became the purchaser of the lot from persons who held under the first judgment. The court below, to reach its conclusions, must have held that the persons in whose favor the judgment of September, 1863, was rendered took nothing thereby. This we suppose to be the law. The judgment was held void, not voidable. It was so held not in a collateral proceeding, but in a direct manner to have the judgment set aside. It is then relieved from those embarrassing considerations which have perplexed courts as to what effect should be given to judgments when they stood unreversed and apparently binding. The question is also freed from any possibility of pretending that it was only voidable. It is declared *void* on evidence not preserved, and not before us. We know of no case where a void judgment is held to support a title. Even the case of *Hammond v. Davenport*, 16 Ohio St., 177, on which the plaintiff in error relies, holds the judgment to be good, although it does so on grounds that fail to convince us that it is correct. Still, it does not go so far as to hold that a void judgment conveys, of its own inherent force, any valid and legal title. This point is decided on reasoning that it would be difficult to shake in the case of *Harris v. Hardeman*, 14 How. S. C., 337, where the authorities are collected. These cases stand in direct conflict with the decision in *Hammond v. Davenport*, and are in our opinion the law. The counsel refers us to section 77 of the code, and to that part of it that provides where a judgment is opened to let in a party, who is served only by publication, to defend, "that the title to any property, the subject of the judgment or order sought to be opened, which by it, or in consequence of it, shall have passed to a purchaser in good faith, shall not be affected by any proceedings under this section, nor shall they affect the title of any property sold before judgment under an attachment." Considerable weight seems to have

been given to a similar provision in the Ohio law in the decision of *Hammond v. Davenport* as an "indication of legislative policy." But we cannot perceive how a provision that protects *bona fide* purchasers under a valid judgment, can be twisted to mean that the legislature intended to protect purchasers under a void judgment. If any inference is to be drawn from this section, it would seem to be directly a contrary one. The legislature have expressly protected one class of purchasers, even when the judgment under which it was made is set aside. It might be inferred that by omitting a totally different class it did not intend to protect them. Those protected by section 77 are those who take under a valid judgment, obtained on a service by publication. In this case there was no judgment, for a void judgment is no judgment at all. It was an attempt to adjudicate upon the rights of Moore, without any service on him, and was a nullity. Under section 77, as a privilege, a certain class of persons are permitted to reopen a judgment lawfully obtained, and litigate the questions settled by the judgment; but they cannot have that privilege without taking it coupled with a condition that, whatever may be the result of the litigation, rights of property obtained under the judgment in good faith shall be preserved. It was perfectly competent for the legislature to prescribe the terms upon which such a privilege should be granted. But in this case no such privilege was granted. The judgment against Moore was not opened in order that the matters involved might be litigated. It was swept away as a nullity, because it had the semblance of a judgment without any jurisdiction in the court that rendered it over the rights of Moore. He had not had his day in court. The process of the law had never reached him, and had no power over him, or his estate; and what was done under such circumstances was *coram non judice*, and amounted to nothing.

II. The evidence in this case is not before us, nor are the *2. Findings of fact sustained, if evidence is not presented.* facts on which the plaintiffs in error were allowed the benefits of the occupying claimant law, further than as they appear in the findings on the issue

as to the title to the lot; and therefore we cannot say on what evidence the decision of the court limiting the claim to improvements made after Mrs. North became the purchaser was based. It may have appeared that all the improvements made anterior to that date were made by James C. C. Moore himself. If so, his heirs could not in this case be made to pay for them to the plaintiffs in error. There is nothing in the record authorizing us to decide that the court erred in this particular.

III. The grounds urged here why the court should have set aside the assessment made by the jury are two: 1.–That the plaintiffs in error were entitled to reasonable notice of the time of making such assessment, and that no such notice was given. 2.–The assessments were too small.

<div style="margin-left:2em">3. Practice; occupying claimants; notice.</div>

The statute makes no provision for a notice; still, as this is a separate proceeding, there can be no doubt that the party not demanding the assessment ought to have and is entitled to a reasonable notice that he may attend, and call the attention of the jury to the improvements made, and take such other action to protect his interests as the nature of the proceedings admit. A notice to the attorney of record is sufficient; for while it is a separate proceeding from the original suit, it grows out of it, and is so far dependent on it that no new process is necessary. *Patterson v. Prather*, 11 Ohio, 35. In this case notice was given to one of the attorneys of plaintiff in error the day before the assessment was made; and it does not appear that he made any objection to the sufficiency of the notice, or that the time was too short. It does appear by his affidavit made afterwards, that the general management of the case had been in the hands of his partner, who had the particular knowledge necessary to advise and direct as to this particular inquiry. This partner was informed of the proceedings on the morning of the day the inquiry as to the value of the improvements was made, attended the same, made no objections as to want of preparation, and was allowed time to find a person who could point out to the jury the improvements to be valued, and

assisted in placing evidence before them. It is too late to object to want of notice, or want of sufficient notice, when a party has appeared without objection, and has taken the chance of a satisfactory decision, has taken steps to obtain such a decision, and makes his objection only when the decision is not such as he expected or desired. By his appearance and participation he waived his right to insist on notice, or to claim that it was not a reasonable one.

It would seem to us from the affidavits offered on the motion to set aside the assessment that the amount returned was too small, but the value of *ex parte* affidavits, made where no opportunity is offered for cross-examination, and by persons selected by the party offering them, is not such that they overbear the decision of twelve disinterested men selected by law to determine the very question at issue. We cannot therefore say that the verdict clearly was too small.

4. Ex parte affidavits; verdicts.

IV. The fourth assignment may be considered with the fifth, for it does not make any difference whether the reason given for a decision is correct or not. It is the decision that this court can reach, not the reason given therefor. It is obvious that we cannot reach the error complained of (if it be one) on error. The facts are not presented. The relief in such cases is by mandamus.

5. Refusal to sign case, or bill of exceptions; how reached.

The judgment is affirmed.

VALENTINE, J., concurring.

BREWER, J., not sitting.