## ARNOLD v. JOINES.

No. 4370. Opinion Filed April 27, 1915.

Opinion on Petition for Rehearing, July 13, 1915.

(150 Pac. 130.)

1.    JUDICIAL SALES—Rights of Purchasers—Vacating Judgment. A void judgment may be set aside at any time and, when a judgment is set aside for want of jurisdiction, any subsequent proceedings, including an order of sale, the confirmation of sale, and the sheriff's deed issued thereunder, are absolutely void.

2.    JUDGMENT—Process to Sustain—Void Judgment. A sheriff's deed issued under an order of attachment obtained by service of summons by publication, the judgment being afterwards set aside by the court for the reason that the defendant was at the time of

service a resident of the state, living upon the land attached, as a homestead, is absolutely void.

3.    **JUDICIAL SALES—Rights of Purchasers—Reversal of Judgment —Statute.**  Section 5176, Rev. Laws 1910, which provides that if any judgment or judgments, in satisfaction of which any lands or tenements are sold, shall at any time thereafter be reversed, such reversal shall not defeat or affect the title of the purchaser or purchasers, is not applicable in a case where the judgment creditor purchases the land at the sheriff's sale, for the reason that this section has application solely to **bona fide** purchasers, who are not parties to the erroneous judgment, nor responsible therefor.

4.    **JUDGMENT—Persons Concluded—Purchasers at Sale.**  Purchasers of property at a judicial sale thereof, and all persons claiming under such purchasers at such judicial sale, are to be recognized as privies to the judgment authorizing the sale, and therefore all such persons are concluded by the judgment.

5.    **COVENANTS—Statute—"Covenant Running With the Land."**  In this state a warranty deed made in substantial compliance with the statutes, and the form of warranty deed provided for therein, shall be and is deemed a covenant on the part of the grantor that, at the time of making the deed, he is legally seised of an indefeasible estate in fee simple of the premises, and has good right and full power to convey the same ,and that the same are clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may claim the same, through title or other claim acquired prior ,thereto, and the covenants of warranty in such deed run with the land, and by this is meant a covenant which accompanies the conveyance of the land from one purchaser to another, through each successive link of the chain of title.

6.    **COVENANTS—Action for Breach—Notice—Measure of Damages.**  Where the judgment creditor purchases the land at the sheriff's sale, and conveys the same by warranty deed, and the title fails because of want or lack of jurisdiction of the court wherein the sheriff's deed was issued, the giving of notice to the grantor is not a condition precedent to maintaining an action for a breach of the warranty, and the measure of damages in such case, for breach of the warranty, is the consideration paid for the land, with interest.

(Syllabus by Robberts, C.)

*Error from District Court, Carter County;*
*S. H. Russell, Judge.*

Arnold v. Joines.

Action by U. S. Joines against J. M. Arnold, to recover for breach of warranty in a deed. Judgment for plaintiff, and defendant brings error. Affirmed, and rehearing denied.

*Sigler & Howard,* for plaintiff in error.

*Thomas Norman* and *Samuel H. Butler,* for defendant in error.

Opinion by ROBBERTS, C. This action was commenced in the district court of Carter county by U. S. Joines, defendant in error herein, for a breach of warranty of title to real estate, upon the following state of facts:

One Clay Blackwell was the owner of certain real estate in the city of Ardmore. On the 26th day of February, 1909, J. M. Arnold, plaintiff in error herein, recovered a judgment against said Blackwell, upon an order of attachment issued out of said court. Service was had by publication. The order of attachment was levied upon the property described in the deeds involved herein, and sustained by the court, and judgment rendered for the amount claimed, with the further order directing the sale of the attached property, which was accordingly done, the sale confirmed, and deed issued by the sheriff to the purchaser, on the 14th day of April, 1909, who was J. M. Arnold, plaintiff in that case, and plaintiff in error herein.

On the 6th day of May, Arnold sold and conveyed said real estate by warranty deed to one J. A. Skipworth.

The *habendum* in said deed is as follows:

"And said J. M. Arnold for his heirs, executors, or administrators does hereby covenant, promise, and agree to and with said party of the second part that at the delivery of these presents he is lawfully seised in his own

right of an absolute and indefeasible estate of inheritance, in fee simple, of, in, and to all and singular the above granted and described premises, with the appurtenances; that the same are free, clear, discharged, and unincumbered of and from all former grants, titles, charges, judgments, taxes, assessments, and incumbrances, of what nature and kind soever, and that he will warrant and forever defend the same unto said party of the first part, their heirs, and all and every person whomsoever lawfully claiming or so claim the same."

On the 30th day of March, 1910, Skipworth sold and conveyed said property to U. S. Joines, the defendant in error herein, by warranty deed, in the same language used in the deed from Arnold to Skipworth, hereinabove set out.

On the 26th day of May, 1910, upon the motion of Blackwell, defendant in the first mentioned case, the court set aside said judgment and all actions and proceedings therein, upon the ground that the judgment was void, for want of service. The order of the court in that behalf is as follows:

"ORDER TO SET ASIDE JUDGMENT.

"This day came on to be heard the motion of the defendant to set aside and vacate the judgment rendered against him in this cause, on the 6th day of February, 1909, because he had not been regularly served and had entered no appearance in this cause. That he had at all times been a resident of this state, which was known to the plaintiff, and because the property attached and sold was his homestead and was not described as the law requires in the summons by publication; and the court being fully advised in the premises, and after hearing the testimony and the argument of counsel, is of the opinion that said motion should be granted. It is therefore ordered, adjudged, and decreed by the court that said judgment be and the same is hereby set aside and held

for naught and void, and that all proceedings had thereunder are void, and that the sale made of lot No. 1 'in block No. 401A, of the city of Ardmore, the attached property in said cause, was void and is hereby vacated and set aside; and that said cause be reinstated on the docket, for such proceedings as may hereafter be had by this court."

After the order setting aside said judgment, Clay Blackwell, the original judgment debtor, threatened and was about to bring an action against U. S. Joines, the last grantee, defendant in error herein, to set aside his deed from Skipworth, and after due inquiry, and being fully informed of the facts, and being advised by an attorney of the effect of the order of the court setting aside and canceling the sheriff's deed, the said U. S. Joines, defendant in error, surrendered his claim to said premises to the said Clay Blackwell, and conveyed the same to him by quitclaim deed, without consideration, and therefore demanded from the plaintiff in error, Arnold, the sum of $125, the amount paid by defendant in error to Skipworth for said property, after deducting the sum of $75, being the amount paid to him by Skipworth, his immediate grantor, for and upon the breach of his said warranty. Payment was refused by plaintiff in error, and defendant in error brought suit to recover the sum of $125, being the amount of balance of the purchase price paid by him to Skipworth.

A demurrer to the petition was filed and overruled by the court, to which exceptions were saved, and which will be considered hereafter. Thereupon defendant answered as follows:

"Comes now J. M. Arnold and for his answer to the plaintiff's petition herein filed says:

"(1)  He denies each and every allegation in the plaintiff's petition.

"(2)  He says that at the time he sold the property to Skipworth, as stated in the plaintiff's petition, the said Clay Blackwell was in possession of said property by and through his tenants, and that said Clay Blackwell yielded possession to the said Skipworth, who went into the possession of said property and held same until he voluntarily surrendered same to Clay Blackwell; that the order made by the court setting aside the judgment did not in any way affect the title of plaintiff, who was then the owner of, and in possession of, said property, and that said order was an interlocutory order, and those things which it recited were not necessary to be recited therein, and were not binding on the plaintiff and are not binding on this defendant.

"(3)  That the plaintiff recovered a judgment against the said Clay Blackwell foreclosing his attachment, and that the sheriff, under an order of said court issued, duly advertised said property for sale, that the defendant purchased said property at a sheriff's sale.  That said sale was duly confirmed by the court, and that thereafter said property was sold by the defendant to J. A. Skipworth and by Skipworth to Joines, as stated in plaintiff's petition.  That both Skipworth and Joines were innocent purchasers of said lot.  That they were not parties to the suit of J. M. Arnold against Clay Blackwell and knew nothing of the defects of said judgment, if any existed.  That at the time said judgment was vacated, as stated in said order, the plaintiff was the owner of, and in possession of, the property mentioned in plaintiff's petition."

The case was tried to a jury, and after the introduction of the evidence, upon the motion of the plaintiff below, the court instructed the jury to return a verdict for the plaintiff, which was accordingly done, and judgment rendered thereon for $125, with interest and costs, to all of which exceptions were duly saved.

The case is here on appeal, and to reverse which the plaintiff in error contends for the following specifications of error:

"(1)   The action of the court in overruling the defendant's demurrer.

"(2)   The action of the court in overruling the defendant's objection to the introduction of testimony in this case.

"(3)   The action of the court in admitting certain evidence over the objection and exception of the defendant, as heretofore stated.

"(4)   The action of the court in overruling the defendant's motion to instruct the jury to return a verdict for the defendant.

"(5)   The action of the court in sustaining the plaintiff's motion to instruct the jury to return a verdict for the plaintiff.

"(6)   The action of the court in instructing the jury to return a verdict for the plaintiff.

"(7)   The action of the court in overruling the defendant's motion for a new trial."

The real question to be determined is:   Was there a breach or failure of warranty of title?  And, if so, does the covenant of warranty, as expressed in the deed, run with the land to such extent as to give the defendant in error, as assignee of the original grantee, a direct cause of action against the plaintiff in error to recover his damages because of said breach?  The trial court answered these questions in the affirmative, and we think correctly.

The first error complained of is the overruling of defendant's demurrer to plaintiff's petition.   That raises practically every question there is in the case, for the reason that there is no material disagreement as to the

facts involved, and therefore we will not take up the demurrer separately, but will dispose of the legal questions as they are hereafter presented, and that will dispose of the demurrer.

The second and third specifications will not be considered, because counsel do not comply with rule 25 (38 Okla. x, 137 Pac. xi) of this court, by "pointing out the particular testimony to the admission or rejection of which they object, stating specifically the objections thereto."

The fourth, fifth, sixth and seventh specifications raise the same questions, and practically the same questions raised by the demurrer to the petition, all of which will be considered together.

The contention of counsel for plaintiff in error that:

"The court erred in admitting in evidence the order of the court setting aside the judgment in the case of *Arnold v. Clay Blackwell,* on the ground that the action of the court was only an interlocutory order"
—cannot be sustained, for the reason that the judgment, and all proceedings thereunder, were absolutely void, whether set aside by the court or not. The order of the court setting aside the judgment was based upon the fact that service of summons on defendant, Clay Blackwell, was attempted to be made by publication, and said defendant has at all times been a resident of the state, and at the time of service by publication was residing upon and occupying the attached property as a homestead, which fact was well known to the plaintiff, and for the further reason that the property attached was not described in the notice as required by law. All these facts are set out in the journal entry as grounds for setting aside the judgment, and will be taken as true.

Undoubtedly the court was proceeding under section 5274, Rev. Laws 1910, which provides: "A void judgment may be vacated at any time." *Phoenix Bridge Co. v. Street,* 9 Okla. 422, 60 Pac. 221; *Anglea v. McMaster,* 17 Okla. 501, 87 Pac. 660.

This court, in passing upon a judgment obtained by service in like manner, says:

"Where a party seeks to bring a defendant into court by service by publication under the Code, he must strictly comply with the requirements of the statute, and, unless this be done, the judgment will be vacated and set aside for want of jurisdiction of the person of the defendant. It must follow that, where the service is absolutely void, every subsequent proceeding, including the judgment, the order of sale, the confirmation of the sale, and the sheriff's deed, must necessarily be void." (*Romig v. Gillett,* 10 Okla. 193, 62 Pac. 807.)

The Supreme Court of Kansas, in passing upon the same statute, used the following language:

"In an action to foreclose a mortgage on real estate, service may be made upon the defendant not residing within the state, by publication; but, before such service can be made, an affidavit must be filed showing that service cannot be made personally on the defendant within the state. And where a service by publication has been made, in such a case, without said affidavit being first filed, the service is void; and every subsequent proceeding in the case founded on such service, including the judgment, the execution or order of sale, the sale, and the sheriff's deed must also * * * be void." (*Shields v. Miller,* 9 Kan. 390.)

The authorities cited by plaintiff in error, in support of his contention upon this question, are not in point, for the reason that, in the cases cited by him, the court had jurisdiction of the parties and the subject-matter, and

the judgments in those cases were not void, but merely voidable, and they were simply set aside by the court for the. purpose of allowing the parties to defend. In the cases of *Moody v. Freeman,* 24 Okla. 701, 104 Pac. 30, and *List v. Jockheck,* 45 Kan. 349, 748, 27 Pac. 184, cited and relied on by counsel the judgments were simply voidable, and were opened up for the purpose of permitting a defense, which clearly distinguishes them from the case at bar.

Of course, the object in introducing this journal entry was to show that the original judgment, upon which the sheriff's deed to plaintiff in error was based, was a void judgment, and the sheriff's deed thereby void, and that fact is clearly established by the judgment roll. The case of *North v. Moore,* 8 Kan. 143, cited by .counsel for defendant in error, is more nearly in point and sustains the contention of counsel. In that case the court says:

"James C. C. Moore was the original owner of the lot. On the 5th of September, 1863, the district court of Leavenworth county made a·decretal order for a conveyance of the lot in controversy to certain parties plaintiffs in the suit against said James C. C. Moore. On the 7th of May, 1866, this judgment was declared to be 'null and void,' and of no effect whatever, for want of jurisdiction of the person of James C. C. Moore. Between the time of rendering these judgments, Maria J. North, one of the plaintiffs in error, became the purchaser of the lot from persons who held under the first judgment. The court below, to reach its conclusions, must have held that the persons in whose favor the judgment of September, 1863, was rendered, took nothing thereby. This we supposed to be the law. The judgment was held void, not voidable. It was so held, not in a collateral proceeding, but in a direct proceeding to have the judgment set aside. It is then relieved from those * * * considerations which have perplexed courts as to what effect should be given

\* \* \* judgments when they stood unreversed and apparently binding. The question is also freed from any possibility of pretending that it was only voidable. It is declared void on evidence not preserved, and not before us. We know of no case where a void judgment is held to support a title."

In such cases as this, it is important to always keep in mind the distinction between a void and voidable judgment. A void judgment is, in legal effect, no judgment at all. By it no rights are divested; from it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are necessarily equally worthless, and have no effect whatever upon the parties or matters in question. A void judgment neither binds nor bars any one. All acts performed under it, and all claims flowing out of it, are absolutely void. The parties attempting to enforce it are trespassers. A purchaser at a sale under a void judgment finds himself without title and without redress. Such was the condition of the plaintiff in error in this case. He had no title whatever under the sheriff's deed, not even a semblance of legal title, and his deed attempting to convey the property, so far as it effects a transfer of the title, was a nullity—a blank. Under such conditions, it was not error to admit the judgment roll setting aside the judgment, but it would have been reversible error to have ruled it out, for the good reason that it establishes the fact that the sheriff's deed to plaintiff in error was absolutely void.

The action of the court in setting aside the judgment, sale, and sheriff's deed is also binding upon the defendant in error, for the reason that he was in privity of estate with the plaintiff in error in that case. The rule in such cases is stated in volume 24, Enc. Law, p. 746, as follows:

"The term 'privity' denotes mutual or successive relationship to the same rights or property. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party, is that they are identified with him in interest; and, whenever this identity is found to exist, all are alike concluded."

24 Enc. Law, p. 748, states:

"A purchaser at a judicial sale, or one to whom a deed of property has been made under the authority of, or in obedience to, the decree of a court of equity, and all persons claiming under him, are in privity of estate to the judgment or decree under which the sale or deed was made, and are concluded thereby; and all persons who were parties to the suit in which the judgment or decree was rendered are precluded from questioning their title. But persons not parties to such suit, and not claiming under persons who were parties, are not precluded from questioning such title."

23 Cyc. 1258, states:

"Purchasers of property at a judicial sale thereof, and all persons claiming under purchasers at a judicial sale, are to be recognized as privies to the judgment authorizing the sale, and therefore all such persons are concluded by the judgment."

The theory of counsel for plaintiff in error that the covenants of warranty of title, as expressed in the deeds, do not run with the land, is untenable. The convenants in the deed are that:

"At the delivery of said deed the grantor is lawfully seised in his own right of an absolute estate in fee simple of, in, and to said premises; that the same are free, clear, and discharged of and from all former grants, titles, and charges of whatever nature and kind soever; and that he will warrant and forever defend the same unto said party of the second part (grantee), his heirs and

assigns, against said party of the first part (grantor) and all and every person whomsoever lawfully claiming or so claim the same."

That is an absolute warranty of title to the grantee and his assigns—a substantial copy of the "warranty deed" form prescribed by the statutes of this state, which has a statutory construction in section 1162, Rev. Laws 1910, as follows:

"A warranty deed made in substantial compliance with the provisions of this act, shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor that at the time of making the deed he is legally seised of an indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same is clear of all incumbrances and liens, and that he warrants to the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same; and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs and personal representatives, as if written at length in such deed."

Our own Supreme Court, by Justice Sharp, in an able and comprehensive opinion in *Faller v. Davis*, 30 Okla. 56, 118 Pac. 382, Ann. Cas. 1913B, 1181, and also in *Brady v. Bank of Commerce*, 41 Okla. 473, 138 Pac. 1020, has taken the broad and sensible view of the law of covenants and cleared away, to a large extent, the mysteries that have for years hung around the uncertainties of the various covenants of warranty, and declared that:

"Covenants of 'seisin' and 'good right to convey' are synonymous, and, if broken at all, are broken when made, and an actual eviction is unnecessary to consummate the breach."

And that:

"In an action for breach of the covenants of seisin and good right to convey, an eviction need not be alleged; but it is sufficient in charging a breach to negative the words of the covenant generally."

Certainly a most sensible, wholesome, and refreshing doctrine, after groping about among the dusty old "myths" of uncertain and incomprehensible covenants. Counsel for plaintiff in error was simply following some of the old mysterious and hazy theories, concerning which there is a very great variety of opinions as to the different kinds of covenants, and as to whether they run with the land or are simply personal; but these old troublesome questions are swept away by the statutes and decisions above referred to, and the covenant of general warranty provided for by the laws in this state binds the grantor to warrant and forever defend the title to the grantee, his heirs and assigns, and by this is meant a covenant which accompanies a conveyance of the land and passes from one purchaser to another through each successive link of the chain of title.

The language in the deed is plain, the statutory construction (section 1162) is plain; and the opinion of Justice Sharp is a full and fair exposition of the law on that subject, and places the stamp of disapproval upon the contention of plaintiff in error that the covenants of warranty embodied in the deeds involved in this case do not run with the land, and clearly settles the law in this state, to the effect that, under a warranty deed made in substantial compliance with the statutes, the covenants of warranty of title run with the land, and are broken, if at all, when the deed is delivered, and that an action will lie without actual eviction. Such, in effect, was the hold-

ing of the trial court in this case, and therein there was no error.

Plaintiff in error also insists that the sheriff's deed was valid notwithstanding the fact that the judgment on which it was based is void; and this insistence is based on section 5176, Rev. Laws 1910, which is as follows:

"If any judgment or judgments, in satisfaction of which any lands or tenements are sold, shall at any time thereafter be reversed, such reversal shall not defeat or affect the title of the purchaser or purchasers; but in such cases, restitution shall be made, by the judgment creditors, of the money, for which such lands or tenements were sold, with lawful interest from the day of sale."

It would hardly seem necessary to further discuss that proposition after what has heretofore been said as to the nullity of the sheriff's deed, issued under an absolutely void judgment, and that would be the holding of this court without authority; but we are not held to that course, for it has been fully settled that the section referred to has no application in this case. In passing upon this same statute, the Supreme Court of Kansas says:

"This section has application solely to *bona fide* purchasers, who are not parties to the erroneous judgment, nor responsible therefor, and who do not have reason to believe that such erroneous judgment will be reversed or vacated by the appellate court. * * * It applies only to strangers to the judgment, who have purchased under the honest belief that the judgment is sufficient. It would not be in consonance with justice or equity to allow a party who had procured an erroneous judgment, and who had procured property thereunder, to retain the fruits of such judgment after it had been set aside and annulled by the superior court." *(Hubbard v. Ogden,* 22 Kan. 671.)

The Supreme Courts of Ohio and Iowa are to the same effect. *Hubbell v. Broadwell,* 8 Ohio, 120; *Twogood v. Franklin,* 27 Iowa, 239.

The claim that the giving of notice to the defendant, plaintiff in error, was a condition precedent to maintaining this suit, cannot be sustained, for the reason that he was a party to the suit in which the judgment was set aside, and had full knowledge of all the transactions in connection with the case. Under such circumstances, it would be a useless and entirely unnecessary act, which no man is required to perform to maintain his rights. The measure of damages upon breach of warranty of title, in this case, is the consideration paid for the land, with lawful interest, less any payments that may have been made thereon to the grantee. *Dale v. Shively,* 8 Kan. 281.

We recommend that the judgment of the court below be affirmed.

### ON MOTION FOR REHEARING.

On the 27th day of April, 1915, this court rendered an opinion in this case affirming the judgment of the lower court.

The record shows that about the month of January, 1909, the plaintiff in error, movant herein, commenced an action in the district court of Carter county against one Clay Blackwell, and caused an order of attachment to be issued and levied on his property in controversy herein. Service was obtained by publication and judgment rendered, attachment sustained, and property sold on execution. The plaintiff in error herein, who was judgment creditor in that case, bought the property at sheriff's sale, obtained a sheriff's deed, and sold it to a man by the name of J. A. Skipworth. Skipworth sold to

U. S. Joines, the defendant in error herein; all parties conveying by warranty deeds in substantial compliance with the form prescribed by the statutes of Oklahoma, the material part of which is as follows:

"At the delivery of said deed the grantor is lawfully seised in his own right of an absolute estate in fee simple of, in, and to said premises; that the same are free, clear, and discharged of and from all former grants, titles and charges of whatever nature and kind soever, and that he will warrant and forever defend the same unto said party of the second part (grantee), his heirs and assigns, against said party of the first part (grantor) and all and every person whomsoever lawfully claiming or so claim the same."

While Joines, the defendant in error herein, was still holding the premises under the deeds mentioned, Blackwell, the original judgment debtor, moved the court to set aside the original judgment, and all actions and proceedings therein, on the ground that:

"He had at all times been a resident of this state, which was known to plaintiff, and because the property attached and sold was his homestead, and was not described as the law requires in the summons by publication."

The court sustained the motion, and in so doing entered the following order and judgment:

"This day came on to be heard the motion of the defendant to set aside and vacate the judgment rendered against him in this cause, on the 6th day of February, 1909, because he had not been regularly served and had entered no appearance in this cause. That he had at all times been a resident of this state, which was known to the plaintiff, and because the property attached and sold was his homestead and was not described as the law requires in the summons by publication; and the court being.

fully advised in the premises, and after hearing the testimony and argument of counsel, is of the opinion that said motion should be granted. It is therefore ordered, adjudged, and decreed by the court that said judgment be and the same is hereby set aside and held for naught and void, and that all proceedings had thereunder are void, and that the sale made of lot No. 1 in block No. 401A, of the city of Ardmore, the attached property in said cause, was void and is hereby vacated and set aside; and that said cause be reinstated on the docket, for such proceedings as may hereafter be had by this court."

It appears from the foregoing journal entry that "after hearing the testimony (on the motion) and argument of counsel," the court sustained the motion and "ordered and decreed that said judgment be set aside and held for naught and void, and that all proceedings had thereunder are void, and the sale made of said lot, the attached property in said cause, was void, and is hereby vacated and set aside, and that said cause be reinstated on the docket, for such other proceedings as may hereafter be had in this court." After hearing the testimony, all proceedings were set aside. The attachment was dissolved, the execution quashed, the sale set aside, the sheriff's deed held for naught, leaving the property in the same condition, as free and clear from the proceedings of the court, as though no action had ever been commenced.

After the judgment was held to be absolutely void and set aside, and the attachment, execution, sheriff's sale, and sheriff's deed all declared to be void, the defendant in error, being the second and last grantee from the plaintiff in error, quitclaimed the property to the original owner, and commenced this action against the plaintiff in error to recover on the breach of warranty, and on trial obtained judgment against him. Defendant appealed to

this court, and the case was affirmed.   Thereupon plaintiff in error filed this application for rehearing.

As grounds for rehearing, counsel for plaintiff in error make three assignments, as follows:

(1) The court overlooked the contention of plaintiff in error that the trial court erred in admitting the judgment roll showing that the original judgment had been set aside, for the reason that an order setting aside a judgment is interlocutory and not appealable.

(2)   The court overlooked the great line of authorities holding that the covenants of title and seisin do not run with the land, and in holding in this case that covenants of title and seisin do run with the land.

(3) The court overlooked the great line of authorities holding that a purchaser at a judicial sale or that an innocent purchaser at such sales takes title to the property which will not be disturbed after said judgment has been set aside and reversed.

In the first contention counsel overlooked the fact that it is not the setting aside of the judgment that affects the defendant in error.   He has no interest in the final result of the judgment.   He is only interested in the judgment of the court so far as it affects the setting aside of the execution, and thereby the sale and sheriff's deed to the land.   When the execution is quashed or set aside, the deed necessarily follows and falls.   The order of the court is that all proceedings be set aside and that the "sale made of the attached property was void and is hereby vacated and set aside."   Counsel certainly cannot, in the face of the statute and decisions, contend that such an order is not final and appealable.

Section 5237, Rev. Laws 1910 (section 6068, Comp. Laws 1909), provides:

"An order affecting a substantial right in an action, when such order, in effect, determines the action and prevents a judgment, and an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action after judgment, is a final order, which may be vacated, modified or reversed, as provided in this article."

In passing upon and construing this section, this court, in *Barnett v. Bohannon*, 27 Okla. 368, 112 Pac. 987, says:

"From the order recalling and quashing the execution, plaintiff has, by petition in error and case-made, brought the case to this court for review, and two questions are presented for our consideration: First, is the order appealable; and, second, did the court commit error in quashing the execution? Section 5237, Rev. Stat. 1910 Ann., provides that a final order, which may be vacated, modified, or reversed by the Supreme Court, is one made 'upon a summary application in an action after judgment.' In considering this identical language as it was found in the statutes of Wisconsin, the Supreme Court of that state, in the case of *Ernst v. The Steamer Brooklyn*, 24 Wis. 616, speaking through Mr. Chief Justice Dixon, held that an application to set aside an execution issued in an action, or the levy made under it, or for a stay of proceedings upon it, or to direct the judgment to be satisfied of record, would fall within the meaning of this language, and hence appealable. Other authorities, based upon statutes of similar import, in which orders of this character have been held appealable, may be noted as follows: *Little v. Atchison, Topeka & S. F. R. R. Co.*, 2 Ind. T. 551 [53 S. W. 331]; *Orr v Haskell*, 2 Mont. 350; *Gilman v. County of Contra Costa*, 8 Cal. 52, 68 Am. Dec. 290; *Wright v. Rogers*, 26 Ind. 218; *McAlister v. State ex rel. Heath et al.*, 81 Ind. 56."

Further comment or citation of authorities is unnecessary. The action of the court in setting aside the execution, sheriff's sale, and deed was a final order and appealable, and the court did not err in admitting the journal entry in evidence.

The second contention is equally untenable. The deeds from plaintiff in error to Skipworth, and from Skipworth to defendant in error, were, in substance, the form provided by the statutes of Oklahoma. If any difference, the covenants of warranty are broader in these deeds than in the statutory form. The principal contention of counsel is that in these deeds the covenants of warranty of title do not run with the land, and in support of this theory they cite, as especially in point, the cases: *Faller v. Davis*, 30 Okla. 56, 118 Pac. 382, Ann Cas. 1913B, 1181, and *Brady v. Bank of Commerce*, 41 Okla. 473, 138 Pac. 1020.

In the first place, the question involved herein was not in either of the cases cited. The question in those cases was whether the language of warranty was broad enough to cover the covenant of seisin (possession), and, if so, whether it was necessary for plaintiff, in an action for breach of warranty under the particular deeds, to allege an eviction, or, in other words, would an action for a breach of warranty lie, while the plaintiff was in possession of the premises? In many of the states it would not, but in this state, as stated by Justice Sharp, *supra,* the covenants of seisin and good right to convey are synonymous, and, if either covenant is broken, it is broken as soon as made, and an action for the breach will lie at once without waiting for eviction.

The trouble with counsel is that he confounds the old common-law covenant of seisin, which meant only coven-

ant of possession, with its later generally adopted meaning, which, as now generally accepted, means a general covenant of warranty of title. In further explanation of this, Justice Sharp, after quoting the deed, says (30 Okla. 60, 61, 118 Pac. 384, 385):

"The deed contains no express covenant of seisin, but is a warranty deed, made in compliance with the requirements of chapter 18 of Comp. Laws 1909. Section 1202 (section 1162, Rev. Laws 1910) of said statutes is as follows: 'A warranty deed, made in substantial compliance with the provisions of this act, shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor, that at the time of making the deed he is legally seised of the indefeasible estate in fee simple of the premises and has good right and full power to convey the same; that the same are clear of all incumbrances and liens, and that he warrants (to) the grantee, his heirs and assigns, the quiet and peaceable possession thereof, and will defend the title thereto against all persons who may lawfully claim the same, and the covenants and warranty shall be obligatory and binding upon any such grantor, his heirs, and personal representatives, as if written at length in such deed.' From the foregoing section, it will be seen that a warranty deed made in substantial compliance with the statute shall be construed the same as if it contained an express warranty of seisin and right to convey, as well as certain other covenants of warranty; and the deed in this case must be construed as if each of the said warranties were contained therein. In *Clapp v. Herdman*, 25 Ill. App. 513, it is said in this connection: 'The deed which appellants executed to appellee must, by the terms of the statute, be held to contain a covenant that, at the time of the making and delivery thereof, they were "lawfully seised of an indefeasible estate in fee simple in and to the premises therein described and had a good right and power to convey the same." ' The statutory covenant is

more comprehensive than the ordinary covenant of seisin, as used in ordinary conveyancing, and is not satisfied by seisin in fact or an actual possession to the grantee. This covenant of seisin is, in legal effect, a covenant of title and, though the maker of the premises conveyed, yet, unless by his deed he is invested with an indefeasible estate in the premises, his covenant of seisin is broken, and the covenantee has the right at once to bring his action for the breach. Tiffany on Real Property, secs. 394, 395; 4 Kent, Comm. 472; 11 Cyc. 1068 *et seq.*; *Greenby v. Wilcocks*, 2 John. (N. Y.) 1, 3 Am. Dec. 379; *Brandt v. Foster*. 5 Iowa. 287."

And then he proceeds with the following language:

"Such being the law, when is a covenant broken? In the United States a large majority of the courts have held that, if covenants of seisin are broken at all, they are broken as soon as made, and consequently cannot run with the land, nor pass to an assignee. In a few jurisdictions, however, the contrary view has been adopted, while in others statutes have been enacted which either, directly or indirectly, accomplish the same end. Among these states adopting the view that the covenant of seisin, if broken, is broken when made, are Arkansas, California, Connecticut, Georgia, Iowa, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, Tennessee, Texas, Vermont, Virginia, Washington. Not being confined by any statute and from the examination of the authorities we have made, we incline to the view observed in the great majority of the sister states, and believe that the reason for the rule there applied better comports with the conditions existing in this state, and that legal, and not actual, seisin should be looked to in determining whether or not the covenant of seisin is broken."

The question considered is: When is the covenant broken? Does the breach happen when the deed is first made? Or must the grantee wait to commence his action

for breach until he is put out of possession. Again, what particular covenant was the justice speaking of? He says covenants of seisin are broken, if broken at all, when made. He evidently had reference to the common-law covenant of seisin (possession), for he proceeds to say that such covenants cannot run with the land, and cites as authority therefor the states of Arkansas, California, Connecticut, Georgia, Iowa, Nebraska, Texas, and several other states. We have taken the pains to examine the laws and decisions of these states, and find that they make the distinction between the old common-law covenant of seisin, which meant possession only, and the statutory covenant of seisin, as used in this state, and explained in *Faller v. Davis, supra,* by the language:

"The statutory covenant is more comprehensive than the ordinary covenant of seisin, as used in ordinary conveyancing, and is not satisfied by seisin (possession) in fact or an actual possession to the grantee. This (statutory) covenant of seisin is, in legal effect, a covenant of title."

The old covenant of seisin, being only a covenant of possession, did not go to the title, but was simply a personal covenant, mere chose in action, not affecting the title to the land, and, of course, could not run with the land, for the reason that, under the common law, choses in action were not assignable, and that is evidently just what was meant by Justice Sharp. In one of the very earliest cases in Arkansas *(Logan v. Moulder,* 1 Ark. 313, 33 Am. Dec. 338), that court says:

"The covenants of seisin, of right to convey, and against incumbrances are personal covenants, not running with the land, nor passing to the assignee; they are mere choses in action, not assignable at common law."

In the same case the court says:

"Covenants of title and quiet enjoyment are real covenants and run with the land."

In *Ross v. Turner*, 7 Ark. 132, 44 Am. Dec. 531, it is said:

"The covenants of seisin and of right to convey are personal covenants, not running with the land, nor passing to the assignee, but are declared to be mere choses in action, not assignable at common law. The covenants of warranty and of quiet enjoyment are in the nature of a real covenant and run with the land and descend to the heirs and are made transferable to the assignee."

Referring again to the same subject, that court, in *Beauchamp v. Bertig*, 90 Ark. 351, 119 S. W. 75, 23 L. R. A. (N. S.) 659, say:

"This court early recognized the distinction between personal covenants (using the word 'personal' with reference to *situs*) and covenants that run with the land, and therefore savor of the realty. In *Logan v. Moulder*, 1 Ark. 313, we held that covenants of warranty belong to the latter class. See, also, *Ross v. Turner*, 7 Ark. 132 [44 Am. Dec. 531]. We believe the authorities with practical unanimity hold to this rule, observing the distinction announced by this court between personal covenants and those that run with the land. Rawle on Covenant for Title, secs. 202, 213; 1 Wharton on Conflict of Laws, sec. 276D, pp. 630, 631."

In *St. L. I. M. & S. Ry. Co. v. Sanders*, 91 Ark. 153, 121 S. W. 337, the following facts appear: A man by the name of Hampton entered into a contract with the railway company conveying certain right of way, and as part of the consideration the company agreed to erect and maintain certain levees against overflow of the grantor's land. Hampton died. The land descended to his wife and

daughter. The wife conveyed, by warranty deed, her half interest to the daughter. The levee failed. The daughter brought suit under the contract. On appeal to the Supreme Court this language was used:

"A covenant of a railway company to build a levee which will protect the covenantees' field from overflow is a covenant which runs with the land."

The same rule applies in California. Under the statutes in that state, certain parties could not testify in a case in which they were interested. In Blackwell et al. v. Atkinson et al., 14 Cal. 470, the facts in substance were that one party conveyed a tract of land by warranty deed. The grantee deeded to a second party by warranty deed. The title failed, and action was brought by the second grantee on breach of warranty. On the trial the original vendor was offered as a witness; objection was made for the reason that he was interested, and therefore incompetent. In passing upon the question the Supreme Court says:

"It is well settled that a vendor with warranty of title is not in general competent as a witness for his vendee in any controversy concerning the title. Where the action concerns the title to personal property, the rule seems to be that the vendor is a competent witness for a second or any subsequent vendee; the objection going only to his credibility. The reason is that the vendor is liable upon his warranty only to his immediate vendee, and his interest is therefore of too remote and contingent a character to constitute a legal disqualification, however much it may detract from the credibility of his testimony. But the reason of the rule, and consequently the rule itself, have no application where the controversy concerns the title to real estate. In the latter case, the covenant of warranty runs with the land, and the liability of the vendor is directly to the person evicted, and not exclusively to his vendee. His interest in the event of the con-

troversy is, therefore, a present, certain, and vested interest. He is bound by his covenant to defend the title or pay the value of the land, and he will not only gain or lose by the direct legal operation and effect of the judgment, but the record of the judgment will be legal evidence for or against him in any subsequent action for a breach of the covenant."

That doctrine has ever since prevailed in California, and it is the settled law of that state that covenants of warranty which are inherent to and affect the title to real estate run with the land.

The same rule applies in New York. In *Geizzler v. De Graf,* 166 N. Y. 344, 59 N. E. 995, 82 Am. St. Rep. 663, that court says:

"In this state, since the enactment of the Code making choses in action assignable, it has been held that the covenant against incumbrances passes with the land through conveyances to a remote grantee. *Coleman v. Bresnahan,* 54 Hun. 619, 8 N. Y. Supp. 158; *Clark v. Priest,* 21 App. Div. 174, 47 N. Y. Supp. 489. But it has been held in the case at bar that it does not, and that proposition is based upon the common-law rule and upon a former decision of the same court. *Seventy-Third Street Bldg. Co. v. Jencks,* 19 App. Div. 314, 46 N. Y. Supp. 2. With this conflict of views concerning the nature and effect of the covenant against incumbrances, and the remedy for a breach of it, this court should adopt the rule best adapted to present conditions and which seems most likely to conform to the intention of the parties and to accomplish the purpose for which the covenant itself is made. The covenant is for the protection of the title, and there is no good reason why it should not be held to run with the land, like the covenant of warranty or quiet enjoyment. The principle which was at the foundation of the common-law rule, that choses in action were not assignable, having become obsolete, there is no reason, that I can perceive, why the rule should survive the reason

upon which it was founded. We hold, therefore. that the covenant against incumbrances attaches to and runs with the land and passes to a remote grantee through the line of conveyances, whether there is a nominal breach or not when the deed is delivered."

We here call attention to the rule in Nebraska. In *Real v. Hollister*, 17 Neb. 661, 24 N. W. 333, the deed recites:

"The grantors  *  *  *  convey and warrant to. * * * the following described real estate.  *  *  *  While this deed may not be such an one as under the law of this state would amount to a deed of full covenants of warranty, yet it shows upon its face to have been an effort to make a warranty deed.  *  *  *  This being, in our view, beyond question, the conveyance from  *  *  * Real to defendant in error must be treated as one of full covenants of title which run with the land. The covenant of warranty is said to be the most effective of the covenants in American deeds, and in some of the states the only one in general use.  *  *  *  It runs with the land and passes with the fee to any subsequent grantee of the same title.  *  *  *  And the last·vendee with warranty may therefore maintain an action for a breach of the covenant against the first or any other warrantor."

The doctrine is now, and always has been, the rule in Nebraska.

We come now to the state of Texas, as one of those cited by counsel in which he claims the covenants of title do not run with the land, and we are tempted to say here that counsel has made the same mistake as to the law in that state that he labored under in all the other several states cited by him, as upholding the rule for which he so vigorously and contentiously contends. That court says in substance:

"It is well settled that the covenant of warranty of title to land is continuous and runs with the land. *Flani-*

*ken v. Neal.* 67 Tex. 629-633, 4 S. W. 212; *Williams v. Turner,* 50 Tex. 137-142; *Saunders v. Flaniken,* 77 Tex. 662, 14 S. W. 236; *Stone v. Sledge,* 87 Tex. 49-56, 26 S. W. 1068, 47 Am. St. Rep. 65."

Again:

"The obligation of the covenant accompanies all conveyances of the land, and passes to each successive purchaser." *Flaniken v. Neal, supra; Williams v. Turner, supra.*

Also:

"The covenant * * * inures to the benefit of the last vendee." *Rutherford v. Montgomery,* 14 Tex. Civ. App. 319-324, 37 S. W. 625; *Williams v. Turner, supra.*

So far as we have been able to ascertain, all the other states cited by counsel are in perfect harmony with the cases above cited. These cases fully sustain the rule laid down in the original opinion herein, and do not conflict, but are in perfect harmony, with *Faller v. Davis* and *Brady v. Bank of Commerce, supra,* when read with an understanding of the different covenants, as modified by our statutes and fully explained by Justice Sharp, *supra.*

The third and last contention of counsel in support of his application for rehearing is:

"That a purchaser at a judicial sale takes title to the property, which will not be disturbed after said judgment has been set aside and reversed."

That question was fully and clearly settled in the original opinion in this case. The contention is based on section 5176, Rev. Laws, which is as follows:

"If any judgment or judgments, in satisfaction of which * * * lands or tenements are sold, shall at any time thereafter be reversed, such reversal shall not defeat or affect the title of * * * purchaser or purchasers;

but in such cases, restitution shall be made by the judgment creditors, of the money, for which such lands or tenements were sold, with lawful interest from the day of sale."

The writer hereof admits that this section has been more or less troublesome to him for a great many years; that its exact meaning seemed to be uncertain and doubtful, and the result, if put into actual practice, always appeared to be unreasonable, unjust, and unfair. The statute, taken alone, simply as an academic proposition, might be subject to the construction placed upon it by counsel for plaintiff in error. When this case was originally before the court, the writer hereof made diligent investigation to, if possible, come to a proper understanding of the meaning of that section, and we were rewarded by finding a decision of the Supreme Court of Kansas, which fully explains the section and construes it squarely and absolutely against the contentions of counsel for movant herein. The case we refer to is *Hubbard v. Ogden*, 22 Kan. 671, in which the court says:

"This section has application solely to *bona fide* purchasers, who are not parties to the erroneous judgment, nor responsible therefor, and who do not have reason to believe that such erroneous judgment will be reversed or vacated by the appellate court. * * * It applies only to strangers to the judgment, who have purchased under the honest belief that the judgment is sufficient. It would not be in consonance with justice or equity to allow a party who had procured an erroneous judgment, and who had procured property thereunder, to retain the fruits of such judgment after it had been set aside and annulled by the superior court."

The language of the court in that case is clear and distinct, and ought not to be misunderstood. As said by the court, the section above referred to applies solely to

*bona fide* purchasers, who are not parties to the erroneous judgment, nor responsible therefor. Does counsel take the position that his client was not a party to that action, or that he was not responsible therefor, or that he was a stranger to the judgment? If he does not, he cannot, under this decision, ask the court to apply that section in protecting his client in the purchase of the real estate under the judgment obtained by service by publication, when the court finds, as a matter of fact, after hearing the testimony, as shown by the journal entry, that the plaintiff in the original case obtained service by publication, and attached the particular property when he knew that the defendant was not only not a nonresident, but that he was at the time living in the property attached, claiming it as his homestead. Does not counsel think that the language of the Kansas court would be peculiarly applicable to his case, wherein it says:

"Such a proceeding would not be in consonance with justice or equity to allow the party who had procured an erroneous judgment, and who had procured property thereunder, to retain the fruits of such judgment, after it had been set aside and annulled by the court"?

The states of Ohio and Iowa have the same statutes, and their courts construed them, in substance, the same as the Kansas court.

In his application for rehearing, counsel for movant request the court not to become prejudiced against him because of his vigorous attack on the original opinion in this case. Such a request was entirely unnecessary. The writer hereof, who was also the writer of the original opinion, while fully realizing the caustic and vigorous manner in which the opinion was attacked, felt absolutely no bias or prejudice, but rather regret, because of it, for

the reason that he felt and still feels that the original opinion was absolutely correct; that it was supported by practically a uniform line of decisions of the courts of this country, including the Supreme. Court of Oklahoma. Evidently counsel fully relied upon and thoroughly believed in their contentions, but they were simply mistaken in the law. We might add here, and with the kindest and best feelings, that such attacks are uncalled for and, as a rule, react upon the author. In a practice of nearly 40 years we have many times been disappointed at decisions, and at the time felt that the court was absolutely and entirely mistaken; but as time rolled on, and we had opportunity to reflect upon the propositions, after the heat and smoke of the battle had cleared away, we began to realize that possibly we were mistaken, and that the ruling of the court was probably correct. We believe in time it will so appear to counsel in this case.

The motion for rehearing should be denied.

By the Court: It is so ordered.